[No. 3131-1.    Division One.    December 8, 1975.]

PETER PAN SEAFOODS, INC., *Appellant*, v. MOGELBERG FOODS, INC., *Respondent*.

*Graham, McCord, Dunn, Moen, Johnston & Rosenquist, Dwight J. Drake,* and *R. Bruce Johnston,* for appellant.

*Bogle & Gates* and *David M. Salentine,* for respondent.

CALLOW, J.—The plaintiff, Peter Pan Seafoods, Inc., a Washington corporation and seafood processor, appeals from an order dismissing Peter Pan's action commenced under the Washington long-arm statute against the defendant Mogelberg Foods, Inc., a New York corporation engaged in business as a seafood broker, on the ground that the court lacked personal jurisdiction over Mogelberg. We reverse the dismissal of the action.

The issue presented is whether a New York corporation purchasing a product from a Washington corporation transacted business within the state of Washington under the circumstances presented and thereby subjected itself to process pursuant to the statute and to the jurisdiction of the Washington courts. The statute reads in part as follows:

> (1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:
> (a) The transaction of any business within this state;

RCW 4.28.185.

During 1971, Mogelberg telephoned Peter Pan from its principal place of business in New Jersey and inquired concerning the purchase of seafood. The telephone discussion initiated a business relationship and a series of sales transactions. Between June 1971 and October 1972, Mogelberg purchased over $440,000 worth of seafood from Peter Pan. Mogelberg solicited each sale by placing telephone orders with Peter Pan. In early 1972, Mogelberg sent a representative to Peter Pan's Seattle office to inspect facili-

ties and to discuss the possibility and terms of larger purchases. The volume of telephone orders increased after this visit. All the sales were consummated in Washington, and most sales were made "F.O.B. Seattle." In March 1973, Peter Pan commenced this action in the Superior Court for King County, Washington, to recover an alleged balance due of approximately $22,000. Mogelberg's motion to dismiss the action, which claimed that the Washington courts lacked jurisdiction over the defendant, was granted.

██ The long-arm statute represents a legislative intent to assert personal jurisdiction over nonresident defendants to the extent permitted by due process. *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 381 P.2d 245 (1963). The evolution of due process limitations upon the exercise of personal jurisdiction over a foreign corporation is represented by the statements made in a progression of three cases. *International Shoe Co. v. Washington*, 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945), expressed the requirements thusly at page 316:

> [D]ue process requires only that in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice."

Over a decade later, *Hanson v. Denckla*, 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958), further defined the requirement for "minimum contacts" by the out-of-state defendant with the forum state, saying at page 253:

> [I]t is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.

Recently the minimum contacts test was enunciated in *Southern Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968), defining the three requirements for jurisdiction in the forum state as follows:

First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

(Footnote omitted.)

The application of these principles to the circumstances of the relationship between the parties indicates that jurisdiction to resolve the cause lies in the trial courts of Washington.

The defendant buyer sought out the plaintiff seller in this state. It was Mogelberg that availed itself of the privilege of acting within Washington. When the representative of the New York corporation initiated the sales transaction by telephoning the representative of the Washington corporation, the New York corporation took the first step to submitting itself to the jurisdiction of this forum. The action of the defendant in soliciting the sales, coupled with the later additional contacts within the state, to wit, the further continuing course of sales within the state, the buyer's inspection of the seller's processing facilities in Washington, and the delivery of goods "F.O.B. Seattle," provides the minimum contacts to satisfy the requirements of "fair play and substantial justice." By its actions, Mogelberg thus made itself a participant in a business transaction in Washington. *McCoy Lumber Indus., Inc. v. Niedermeyer-Martin Co.*, 356 F. Supp. 1221 (M.D. N.C. 1973); *Griffiths & Sprague Stevedoring Co. v. Bayly, Martin & Fay, Inc.*, 71 Wn.2d 679, 430 P.2d 600 (1967). *See also Premo Specialty Mfg. Co. v. Jersey-Creme Co.*, 200 F. 352 (9th Cir. 1912); *Simpson Timber Co. v. Great Salt Lake Minerals & Chem. Corp.*, 296 F. Supp. 243 (D. Ore. 1969); *Dahlberg Co. v. Western Hearing Aid Center, Ltd.*, 259 Minn. 330, 107 N.W.2d 381 (1961).

We hold that when an out-of-state buyer of goods, upon its own initiative and in furtherance of its

business purposes, enters another state through a desire to purchase goods from a seller within that state, it submits itself to the jurisdiction of the seller's state in a suit brought by the seller for all or part of the purchase price of the goods if its actions within the seller's state gave rise to the cause of action and the imposition of jurisdiction will not offend traditional notions of fair play and substantial justice. *Southern Mach. Co. v. Mohasco Indus., Inc.*, *supra*; *Drilling Eng'r, Inc. v. Independent Indonesian Am. Pet. Co.*, 283 So. 2d 687 (La. 1973); *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 381 P.2d 245 (1963); *International Sales & Lease, Inc. v. Seven Bar Flying Serv., Inc.*, 12 Wn. App. 894, 533 P.2d 445 (1975). *See also Johnson v. Atlantic & Pac. Fisheries Co.*, 128 Wash. 578, 224 P. 13 (1924); *Macario v. Alaska Gastineau Mining Co.*, 96 Wash. 458, 165 P. 73 (1917); *In Personam Jurisdiction Over Nonresident Buyers: Louisiana Lengthens Its Long-Arm*, 34 La. L. Rev. 691 (1974).

This precept must be examined further in the light of the quality, nature and extent of the buyer's activity in the seller's state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *State v. Reader's Digest Ass'n*, 81 Wn.2d 259, 501 P.2d 290 (1972); *Deutsch v. West Coast Mach. Co.*, 80 Wn.2d 707, 497 P.2d 1311, *cert. denied*, 409 U.S. 1009 (1972); *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 435 P.2d 626 (1967); *Henry R. Jahn & Son, Inc. v. Superior Court*, 49 Cal. 2d 855, 323 P.2d 437 (1958). *See also* 27 A.L.R.3d 397 (1969); 23 A.L.R.3d 551 (1969); 19 A.L.R.3d 13 (1968); 12 A.L.R.2d 1439 (1950), and cases cited therein. The precept must also be reviewed with additional factors in mind: (1) the interests of the state in providing a forum for its residents or in regulating the business involved; (2) the relative availability of evidence and the burden of defense in one place rather than another; (3) the ease of access to an alternative forum; (4) the avoidance of a multiplicity of suits and conflicting adjudica-

tions; and (5) the extent to which the cause of action arose out of the defendant's local activities. *Fisher Governor Co. v. Superior Court*, 53 Cal. 2d 222, 347 P.2d 1, 1 Cal. Rptr. 1 (1959). *See also* von Mehren & Trautman, *Jurisdiction to Adjudicate: A Suggested Analysis*, 79 Harv. L. Rev. 1121 (1966); Comment, *Jurisdiction Over Non-Residents — The Washington "Long-Arm" Statute*, 38 Wash. L. Rev. 560 (1963), and cases cited therein.

Jurisdiction, however, must not be extended to those foreign buyers who purchase an item by telephone, mail, or in person, and who have not initiated the transaction and actively carried on business negotiations within the state. *Whittaker Corp. v. United Aircraft Corp.*, 482 F.2d 1079 (1st Cir. 1973); *Architectural Bldg. Components Corp. v. Comfort*, 528 P.2d 307 (Okla. 1974); *Yankee Metal Prods. Co. v. District Court*, 528 P.2d 311 (Okla. 1974). *See also Smith v. York Food Mach. Co.*, 81 Wn.2d 719, 504 P.2d 782 (1972); *NRM Corp. v. Pacific Plastic Pipe Co.*, 36 Ohio App. 2d 179, 304 N.E.2d 248 (1973).

In each case courts must consider and weigh all of these elements discussed in order that both parties receive as full an opportunity to present or defend their case as possible and that neither party be imposed upon more than necessity requires. As foreseen in *International Shoe Co. v. Washington*, 326 U.S. 310, 319, 90 L. Ed. 95, 66 S. Ct. 154, 160, 161 A.L.R. 1057 (1945):

> But to the extent that a corporation exercises the privilege of conducting activities within a state, it enjoys the benefits and protection of the laws of that state. The exercise of that privilege may give rise to obligations, and, so far as those obligations arise out of or are connected with the activities within the state, a procedure which requires the corporation to respond to a suit brought to enforce them can, in most instances, hardly be said to be undue.

We hold that the jurisdictional power to adjudicate the issues between the parties exists in the Washington courts. We note, however, the contentions between the parties will involve on trial, *inter alia*, whether the seller shipped the

full quantity that it charged for, whether the seller overcharged, whether the buyer had paid an invoice charged for, whether the seller made a shipment that the buyer ordered but claims it never received, whether the seller shipped some salmon represented to be of high quality but is claimed to have been inferior, whether one shipment of rejected fish was spoiled, and whether the buyer ordered three shipments that the seller charged for but which the buyer denies either ordering or receiving. From the contentions brought to our attention, it appears that the convenient forum for litigation of the issues is Washington. However, it may develop that the difficulties of litigation and the convenience of the parties and witnesses would indicate to the trial court that the doctrine of forum non conveniens should be applied and the case dismissed in this jurisdiction for litigation of the issues in New York or New Jersey. *Werner v. Werner,* 84 Wn.2d 360, 526 P.2d 370 (1974); *Nixon v. Cohn,* 62 Wn.2d 987, 385 P.2d 305 (1963). This decision is within the discretion of the trial court, who should consider all of the factors presented on remand of the cause. Any award of attorney's fees to the defendant, in the event the cause is tried in this state and the defendant prevails, shall abide the determination of the trial court on the merits. RCW 4.28.185; *State v. O'Connell,* 84 Wn.2d 602, 528 P.2d 988 (1974); *Werner v. Werner, supra; Mahnkey v. King,* 5 Wn. App. 555, 489 P.2d 361, 51 A.L.R.3d 1331 (1971).

The order of dismissal is reversed and the cause remanded for further proceedings.

WILLIAMS, C.J., and JAMES, J., concur.