[No. 12106–5–I.   Division One.   December 5, 1984.]

LAURA HOGAN, ET AL, *Appellants*, v. KEITH R. JOHNSON, ET AL, *Respondents*.

*DeFunis & Balint, P.S.,* and *Marco DeFunis,* for appellants.

*David L. Martin* and *Craig L. McIvor,* for respondents Johnson.

*Harold B. Field,* for respondent El Cajon Valley Hospital.

COLEMAN, J.—Laura and Daniel Hogan appeal from an order granting summary judgment dismissing their medical malpractice claim for want of personal jurisdiction over respondents.

In 1974, appellant Laura Hogan obtained medical services for birth control procedures from Dr. Keith R. Johnson in El Cajon, California. Prior to consultation with Dr. Johnson, Mrs. Hogan had used an IUD. After meeting with Dr. Johnson, Mrs. Hogan decided that she would undergo surgery for a tubal coagulation and a D & C procedure. She alleges that she advised Dr. Johnson and El Cajon Valley Hospital that she had an IUD inserted and that it was her main mode of birth control. She further claims that follow-

ing the operation, respondents advised her that the IUD had been removed.

In 1980, appellant married Daniel Hogan and moved to the state of Washington. Within a few months after arriving in. Washington she began experiencing difficulty with the still present IUD. She was hospitalized three times in Seattle; a complete hysterectomy was performed on the third occasion. She alleges that she had no knowledge of the wrongful conduct of respondents until she was a resident of Washington. She further alleges that respondents knew she was a transient when she was treated in California and were aware or should have been aware that she would not be remaining there, but would be locating elsewhere. Both Dr. Johnson and the El Cajon Valley Hospital deny any contact with the State of Washington.

It is appellants' theory that the alleged negligent medical treatment performed in California constitutes commission of a tortious act within this state, thus permitting Washington to assert jurisdiction under the long–arm statute, RCW 4.28.185(1)(b). Appellants also contend that such assertion of jurisdiction does not offend due process. Respondents argue that the activity in question does not constitute tortious conduct in the state of Washington and further argue that if the alleged activity is construed as a tort, assertion of jurisdiction offends traditional notions of fair play and substantial justice, thereby violating the concept of due process.

It is the settled law in Washington that long–arm jurisdiction is intended to operate to the full extent allowed by due process except where limited by the terms of the statute. *Werner v. Werner,* 84 Wn.2d 360, 364, 526 P.2d 370 (1974). In *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 115–16, 381 P.2d 245 (1963), the Supreme Court set out three basic factors which must be satisfied in order to find personal jurisdiction:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action

must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) *Tyee,* at 115–16. In the context of products liability cases, our Supreme Court has interpreted the "tortious act" provision of our long–arm statute to confer jurisdiction when the alleged negligent act takes place out of the jurisdiction but the injury occurs within the state of Washington. *Smith v. York Food Mach. Co.,* 81 Wn.2d 719, 722, 504 P.2d 782 (1972); *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 471, 403 P.2d 351 (1965), *cert. denied,* 382 U.S. 1025 (1966); *Nixon v. Cohn,* 62 Wn.2d 987, 995–97, 385 P.2d 305 (1963). However, in the products liability context, the defendant must have intended or at least be chargeable with the knowledge that his conduct might have consequences in another state. Jurisdiction will not lie when the facts show only the in–state consequence of an act done in another state. *Oliver v. American Motors Corp.,* 70 Wn.2d 875, 889, 425 P.2d 647 (1967).

Washington has also taken jurisdiction under the "tortious act" provision in other contexts. *In re Miller,* 86 Wn.2d 712, 548 P.2d 542 (1976) (jurisdiction over nonresident father for nonsupport when he purposefully brought children to forum); *Werner v. Werner,* 84 Wn.2d 360, 526 P.2d 370 (1974) (jurisdiction over nonresident notary when notarized forgery was affixed to document affecting interests in immovables in Washington); *Bowen v. Bateman,* 76 Wn.2d 567, 458 P.2d 269 (1969) (jurisdiction over nonresidents who purposefully sought contact with Washington resident for purpose of fraud or misrepresentation); *Thiry v. Atlantic Monthly Co.,* 74 Wn.2d 679, 445 P.2d 1012 (1968) (jurisdiction over nonresident circulating alleged

libel in Washington). However, a nonphysical loss suffered in Washington is not sufficient in itself to confer jurisdiction. *See DiBernardo–Wallace v. Gullo,* 34 Wn. App. 362, 661 P.2d 991 (1983) (no jurisdiction when alleged fraud had an effect in Washington only because plaintiff had chosen to reside there); *Oertel v. Bradford Trust Co.,* 33 Wn. App. 331, 655 P.2d 1165 (1982) (no jurisdiction where defendant issued certificate in New York to Washington resident who suffered loss while in Washington).

Washington has not considered whether an alleged act of malpractice in another state constitutes a "tortious act" in Washington if the patient moves to Washington and then suffers injury and damage from the malpractice. The problem is conceptually different from the products liability cases. In products liability, an allegedly tortious act does not affect the plaintiff until the product reaches the forum state. While the negligence took place elsewhere, the act which affects the particular plaintiff occurs in the forum state. By contrast, in the malpractice situation, the negligent act has already affected the particular plaintiff before the plaintiff travels to the forum state. Thus, analogies to the products liability cases are not especially helpful in determining where the "injury," "harm," or "tortious act" occurred.

The cases holding that there is a "tortious act" reason that the injury occurring within the state is an inseparable part of the alleged tort committed elsewhere, and, therefore, the "tortious act" is deemed committed in Washington. *Smith v. York Food Mach. Co., supra* at 722; *Bowen v. Bateman, supra* at 575; *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra* at 471. This analysis is less convincing in a medical malpractice context where the act which involved the particular plaintiff occurred outside of the forum state. If the injury and the tort are "inseparable," it seems as logical in the malpractice situation to deem the injury occurred where the act of malpractice took place, even though the damages were manifested later. Some courts have used this analysis. *Kurtz v. Draur,* 434 F.

Supp. 958, 962 (E.D. Pa. 1977); *McAndrew v. Burnett,* 374 F. Supp. 460, 463 (M.D. Pa. 1974); *Attanasio v. Ferre,* 93 Misc. 2d 661, 401 N.Y.S.2d 685, 688 (1977).

Other courts have rejected the assertion of jurisdiction in malpractice cases after analyzing the differences between malpractice and products liability. While sometimes finding that a "tortious act" took place within the forum state, these courts hold that constitutional restrictions and policy considerations preclude jurisdiction. *Wright v. Yackley,* 459 F.2d 287, 289–91 (9th Cir. 1972); *Cook v. G.D. Searle & Co.,* 475 F. Supp. 1166, 1168–69 (S.D. Iowa 1979); *Gelineau v. New York Univ. Hosp.,* 375 F. Supp. 661, 667 (D.N.J. 1974); *Simmons v. State,* ___ Mont. ___, 670 P.2d 1372, 1380–82 (1983); *State ex rel. Sperandio v. Clymer,* 581 S.W.2d 377, 383 (Mo. 1979); *Woodward v. Keenan,* 79 Mich. App. 543, 261 N.W.2d 80, 82–83 (1977); *Kailieha v. Hayes,* 56 Hawaii 306, 536 P.2d 568, 570–72 (1975). The *Gelineau* court's analysis is characteristic of the policy concerns:

> When one seeks out services which are personal in nature, such as those rendered by attorneys, physicians, dentists, hospitals or accountants, and travels to the locality where he knows the services will actually be rendered, he must realize that the services are not directed to impact on any particular place, but are directed to the needy person himself. While it is true that the nature of such services is that if they are negligently done, their consequences will thereafter be felt wherever the client or patient may go, it would be fundamentally unfair to permit a suit in whatever distant jurisdiction the patient may carry the consequences of his treatment, or the client the consequences of the advice received.

*Gelineau v. New York Univ. Hosp., supra* at 667.

■ Thus, where malpractice is the underlying tort, there is no judicial consensus as to whether the in–state effects of an out–of–state malpractice act constitute an in–state "tortious act." However, even if we were to assume in the present case that a "tortious act" was committed in the state of Washington, due process considerations would pre-

clude us from permitting assertion of jurisdiction. We therefore align ourselves with those authorities holding that constitutional and policy considerations preclude jurisdiction. Long–arm statutes which assert jurisdiction over a defendant for a tortious act committed out of the forum state are constitutional only if the defendant has minimum contacts with the forum state such that maintenance of the suit does not offend traditional notions of fair play and substantial justice. *International Shoe Co. v. Washington,* 326 U.S. 310, 90 L. Ed. 95, 66 S. Ct. 154, 161 A.L.R. 1057 (1945). In judging minimum contacts, a court must examine the relationship between the defendant, the forum, and the litigation. *Shaffer v. Heitner,* 433 U.S. 186, 53 L. Ed. 2d 683, 97 S. Ct. 2569 (1977).

In the present case there is no jurisdiction over respondents merely because it was foreseeable that a patient treated in California would later move to Washington. Though jurisdiction might be exercised if sufficient contacts could be shown, there is no alleged contact with Washington other than the action of the appellant in taking up residence here. As the Ninth Circuit has said:

In the case of personal services focus must be on the place where the services are rendered, since this is the place of the receiver's (here the patient's) need. The need is personal and the services rendered are in response to the dimensions of that personal need. They are directed to no place but to the needy person herself. It is in the very nature of such services that their consequences will be felt wherever the person may choose to go. However, the idea that tortious rendition of such services is a portable tort which can be deemed to have been committed wherever the consequences foreseeably were felt is wholly inconsistent with the public interest in having services of this sort generally available. Medical services in particular should not be proscribed by the doctor's concerns as to where the patient may carry the consequences of his treatment and in what distant lands he may be called upon to defend it. The traveling public would be ill

served were the treatment of local doctors confined to so much aspirin as would get the patient into the next state. The scope of medical treatment should be defined by the patient's needs, as diagnosed by the doctor, rather than by geography.

*Wright v. Yackley,* 459 F.2d 287, 289–90 (9th Cir. 1972). The facts in *Wright* are instructive. While a resident of South Dakota, plaintiff Mina Wright received treatment from a South Dakota doctor. At his direction, she began taking drugs under prescriptions permitting unlimited refills. After moving to Idaho, she attempted to have the prescriptions refilled at an Idaho drugstore. The druggist advised her that confirmation of the prescriptions was required. At the written request of the plaintiff, and without charge, the defendant doctor furnished copies of the original prescriptions, and based upon these copies, the Idaho pharmacist filled the prescriptions. In her malpractice action against the South Dakota doctor, plaintiff alleged that she was injured by use of the drugs. However, the *Wright* court held that the Idaho district court could not exercise long–arm jurisdiction over the defendant doctor. In so holding, the court noted that the mailing of the prescriptions was the doctor's only contact with Idaho. Moreover, the contact was not self–initiated and would not benefit the doctor. *Wright,* at 289 n.4. The court distinguished this situation from cases involving "voluntary, interstate economic activity, for example, which is directed at various states in order to benefit from effects sought in those states . . ." *Wright,* at 290.

In *Wright,* as in the present case, the respondents did not purposely avail themselves of the privilege of conducting activities within the forum state. *Wright,* at 290; *Hanson v. Denckla,* 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958). Respondents' only "contact" with Washington, *i.e.,* the fact that their patient moved to Washington after treatment, cannot justify the exercise of long–arm jurisdiction.

For the reasons stated herein, the summary judgment of dismissal is affirmed.

CORBETT, A.C.J., and WILLIAMS, J., concur.

Reconsideration denied January 9, 1985.