[No. 17581-5-I.   Division One.   October 26, 1987.]

GRANGE INSURANCE ASSOCIATION, *Appellant,* v. THE STATE OF WASHINGTON, ET AL, *Defendants,* THE STATE OF IDAHO, ET AL, *Respondents.*

*Douglas R. Shepherd* and *Shepherd & Abbott,* for appellant.

*Gerald M. Ormiston* (*John P. Howard,* of counsel), for respondents.

WETHERALL, J.*—Grange Insurance Association, assignee of Harold and Rose Marie Holloway, appeals from an order granting the State of Idaho's motion to dismiss for lack of personal jurisdiction.

## FACTS

In 1977, Harold and Rose Marie Holloway purchased dairy cows in the state of Idaho. At that time, Idaho law required all cattle sold in Idaho to be tested for brucellosis, a highly contagious disease. Pursuant to that law, the dairy cows purchased by the Holloways were tested by a veterinarian employed by the State of Idaho's Department of Agriculture and Bureau of Animal Health. The health cer-

---

*This appeal was heard by a Supreme Court Justice, a retired Supreme Court Justice, and a Superior Court Judge sitting as Court of Appeals Judges Pro Tempore in Division One.

tificates for the Holloways' animals certified that the cows were free from "infectious, contagious, or communicable disease." The certificates also stated that (1) the cows were intended for "interstate" sale; (2) that the Holloways resided in Washington State; and (3) that the testing was approved by the "import–export clerk" for the "Bureau of Animal Health, State of Idaho."

The Holloways immediately proceeded to transport these cows to their dairy farm in Washington State. A short time later, the dairy farms surrounding the Holloways' farm experienced an outbreak of brucellosis. The affected farmers subsequently brought suit against the Holloways, alleging that the Holloways sold them dairy cattle infected with brucellosis. These suits resulted in the entry of two judgments against the Holloways in the amount of $2,933,235.12.

Appellant Grange Insurance Association settled the claims against the Holloways and brought this contribution action as the assignee of all claims of Harold and Rose Marie Holloway. Grange Insurance contends that Idaho negligently implemented and maintained its program of brucellosis evaluation and control and that this alleged negligence on the part of Idaho was the cause of the injuries suffered by the Holloways in the original action.

Pursuant to CR 12(b)(2), Idaho sought and the trial court granted an order dismissing it from this action on the ground that a Washington court could not entertain personal jurisdiction over Idaho. We reverse.

## DECISION

ISSUE I: By certifying livestock for export to Washington State, did the State of Idaho become amenable to the personal jurisdiction of a Washington court within the intent of Washington's long–arm statute, RCW 4.28.185, and the due process clause of the federal constitution?

The enormous expansion of personal jurisdiction in this country has been mirrored in Washington, and in several instances Washington has led the way in furthering such

expansion. *See* Trautman, *Long–Arm and Quasi in Rem Jurisdiction in Washington,* 51 Wash. L. Rev. 1 (1975). Long–arm jurisdiction in this state was intended to be operative to the full extent allowed by due process except where limited by the terms of RCW 4.28.185.[1] *See Deutsch v. West Coast Mach. Co.,* 80 Wn.2d 707, 497 P.2d 1311, *cert. denied,* 409 U.S. 1009 (1972); *Oliver v. American Motors Corp.,* 70 Wn.2d 875, 425 P.2d 647 (1967); *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 381 P.2d 245 (1963). This court finds no reason to retreat from our current personal jurisdiction boundaries.

■■ Historically, jurisdiction was grounded on the court's de facto power over the defendant's person. Therefore, his presence was prerequisite to its rendition of a judgment personally binding him. *Pennoyer v. Neff,* 95 U.S. 714, 733, 24 L. Ed. 565, 572 (1877). Today, due process requires only that in order to subject a nonresident defendant to a judgment in personam, the defendant must have certain minimum contacts such that the maintenance of the suit does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154, 158, 161 A.L.R. 1057 (1945).

As conditions precedent to the exercise of personal jurisdiction over nonresident defendants pursuant to RCW 4.28.185(1)(a) and (b), the following factors have been promulgated: (1) The nonresident defendant must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be

---

[1]The current Washington long–arm statute, RCW 4.28.185, provides, in part:

"(1) Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person, and, if an individual, his personal representative, to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

"(a) The transaction of any business within this state;

"(b) The commission of a tortious act within this state;

"(c) The ownership, use, or possession of any property whether real or personal situated in this state;"

connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, considerations being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation. *Tyee Constr. Co. v. Dulien Steel Prods., Inc., supra* at 115–16.

These factors are, in part, a distillation of the due process standards announced in *International Shoe Co. v. Washington, supra,* and refined in *Hanson v. Denckla,* 357 U.S. 235, 2 L. Ed. 2d 1283, 78 S. Ct. 1228 (1958); *Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n,* 339 U.S. 643, 94 L. Ed. 1154, 70 S. Ct. 927 (1950); *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 96 L. Ed. 485, 72 S. Ct. 413 (1952); *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L. Ed. 2d 223, 78 S. Ct. 199 (1957).

The first two factors are based on Washington's long–arm statutes. The third factor is related to the convenience of the forum and federal constitutional due process restrictions to any state's assertion of personal jurisdiction upon nonresident defendants. *International Sales & Lease, Inc. v. Seven Bar Flying Serv.,* 12 Wn. App. 894, 533 P.2d 445 (1975); *Werner v. Werner,* 84 Wn.2d 360, 526 P.2d 370 (1974).[2]

[2]While these factors have served as functional guideposts anterior to the exercise of adjudicatory power, they are not necessarily the constitutional limits of the forum's jurisdiction. *See generally* Von Mehren & Trautman, *Jurisdiction To Adjudicate: A Suggested Analysis,* 79 Harv. L. Rev. 1121 (1966); Comment, *Developments in the Law: State–Court Jurisdiction,* 73 Harv. L. Rev. 909 (1960).

Understandably, the broadened concept of personal jurisdiction over nonresident defendants and foreign corporations, in cases falling within the scope of RCW 4.28.185(1)(a), does not readily lend itself to the promulgation of an infallible formula automatically determinative of every case. The amount and kind of activities which must be carried on in the forum state in order to make jurisdiction of that state reasonable and just are to be determined in each case. *Perkins v. Benguet Consol. Mining Co.,* 342 U.S. 437, 445, 96 L. Ed. 485, 72 S. Ct. 413 (1952); *Tyee Constr. Co. v. Dulien Steel Prods., Inc.,* 62 Wn.2d 106, 115, 381 P.2d 245 (1963).

Washington courts have consistently applied the *Tyee* factors which we hold must be present if jurisdiction is to be entertained. We find that the *Tyee* factors are satisfied here.

With respect to the first two factors, Grange Insurance asserts that its cause of action rises from Idaho's purposeful act of certification. Whether a "tortious act" was actually committed is not presently before us. Grange Insurance alleged that the injury occurred in Washington and since such injury is an inseparable part of the "tortious act" as mentioned in RCW 4.28.185(b)(1), the "tortious act," for the purpose of this appeal, is deemed to have occurred within the state. *See Hogan v. Johnson,* 39 Wn. App. 96, 692 P.2d 198 (1984); *Smith v. York Food Mach. Co.,* 81 Wn.2d 719, 722, 504 P.2d 782 (1972); *Bowen v. Bateman,* 76 Wn.2d 567, 575, 458 P.2d 269 (1969); *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 471, 403 P.2d 351 (1965), *cert. denied,* 382 U.S. 1025 (1966).

Addressing the third *Tyee* factor, the question becomes under what circumstances should Washington courts refuse to hear the matter because of due process concerns? The Ninth Circuit has set out the factors the court should consider when addressing the due process criteria: (1) the extent of the purposeful interjection into the forum state; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum to plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum. *Cubbage v. Merchent,* 744 F.2d 665 (9th Cir. 1984); *see also Peter Pan Seafoods, Inc. v. Mogelberg Foods, Inc.,* 14 Wn. App. 527, 544 P.2d 30 (1975); *Insurance Co. of North Am. v. Cruz,* 649 F.2d 1266 (9th Cir. 1981); *Hirsch v. Blue Cross, Blue Shield,* 800 F.2d 1474 (9th Cir. 1986).

We find it appropriate to apply this 7–factor test to the circumstances of the case at hand in determining the rea-

sonableness of a Washington court asserting jurisdiction over the State of Idaho.

## I
### Extent of Purposeful Interjection

The due process clause protects a defendant's right to receive fair warning that his actions might subject him to suit in a given jurisdiction. This safeguard allows him to structure his conduct with a degree of assurance as to what will flow from his conduct. *See Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985).

The purposeful availment prong is satisfied when a defendant takes deliberate actions within the forum state or creates continuing obligations to forum residents. *Burger King Corp. v. Rudzewicz,* 105 S. Ct. at 2184. It is not required that a defendant be physically present within, or have physical contacts with, the forum, provided that his efforts are "purposefully directed" toward forum residents. *Burger King Corp. v. Rudzewicz,* 105 S. Ct. at 2185; *Haisten v. Grass Vly. Med. Reimbursement Fund, Ltd.,* 784 F.2d 1392, 1397 (9th Cir. 1986); *Pacific Atl. Trading Co. v. M/V Main Express,* 758 F.2d 1325, 1330 (9th Cir. 1985); *see also Travelers Health Ass'n v. Virginia ex rel. State Corp. Comm'n,* 339 U.S. 643, 648, 94 L. Ed. 1154, 70 S. Ct. 927, 929 (1950).

In this case, we have an Idaho resident selling dairy cattle from a known diseased area with an assurance through certification by Idaho that the cows were free of brucellosis. Idaho knowingly injected itself in interstate sales of cows by certifying the health of each animal. The sale of the cows was clearly documented as a sale to Washington residents for importation into Washington. Interstate sales could not be completed without the testing and approval of State of Idaho agents. The animals were tested for export and cleared. Without this clearance, a sale to Washington residents could not have occurred. The cows were later found to be carrying the disease brucellosis and caused

millions of dollars in damages in Whatcom County, Washington. The acts of the State of Idaho were "purposeful", and not the sort of "fortuitous" contact which the Court, in *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980), found insufficient for jurisdictional due process purposes.

In *World–Wide Volkswagen,* the United States Supreme Court provided guideposts as to what sorts of contacts with a forum state were so "fortuitous" as to not meet the standard of "minimum contacts" for personal jurisdiction purposes. In *World–Wide Volkswagen,* a single automobile, sold by the defendants in New York to New York residents, was involved in an accident while passing through Oklahoma. The Court's majority opinion held that since this single accident was the only contact the defendant had with Oklahoma that the Oklahoma court could not, consistent with the due process clause of the Fourteenth Amendment, exercise personal jurisdiction over the New York defendants.

Unlike the isolated, fortuitous drive–through situation in *World–Wide Volkswagen,* the State of Idaho, located on the border of the forum state, maintains an extensive, continuing pattern of trade with the forum state. The State of Idaho's certification of livestock is part of an ongoing import–export program designed to promote the trade of livestock between Idaho and Washington. The record reflects that, rather than an "isolated occurrence," the inspection by Idaho and subsequent purchase of livestock by Washington residents is continuous and of such proportions that vast numbers of permits are issued to cover such transfers. At the time of the sale, Idaho Code § 25–601 cited Washington's counterpart, RCW 16.40[3] a recognition

---

[3]In 1977, Idaho Code § 25–601 provided:

"The department of agriculture (hereinafter referred to as department) is hereby authorized to cooperate with the bureau of animal industry of the United States department of agriculture (hereinafter referred to as bureau), for the purpose of eradication of Bang's disease among cattle in the state of Idaho. The department shall make rules and regulations for the administration of this act and

of the ongoing nature of livestock transfers between Idaho and Washington. This reference also confirms that Idaho was aware of Washington law regarding import of livestock.

To satisfy due process this court must determine if any facts appear showing a possession of information on the part of Idaho which information would in any way charge Idaho with knowledge that this transaction might have out–of–state consequences. *Smith v. York Food Mach. Co.,* 81 Wn.2d 719, 724, 504 P.2d 782 (1972); *Oliver v. American Motors Corp.,* 70 Wn.2d 875, 889, 425 P.2d 647 (1967).

Clearly, the record reflects that all necessary information was available to agents of the State of Idaho. The certificate identifies that the livestock are for *export*. On the face of each health certificate issued on the livestock sold to the Holloways, the destination of Toledo, Washington, is clearly printed. Thus, Idaho's rendition of services directly affecting Washington residents was not an "unforeseeable, isolated occurrence." *See World–Wide Volkswagen Corp. v. Woodson,* 100 S. Ct. at 567.

Under this analysis, Idaho has therefore "purposefully availed" itself of the privilege of conducting activities in Washington. Because Idaho's actions in Washington were not an "isolated occurrence", it should reasonably foresee being haled into Washington courts.

## II
### Burden on Defendant

Idaho is not unfamiliar with Washington law. While Idaho, a border state, might suffer minor inconvenience in being haled before the courts of Washington, Washington is

---

provide therein for the manner, method and system of testing cattle for Bang's disease in cooperation with the bureau for the eradication of said disease, and for such preventive measures as may be deemed necessary to carry out the cooperative work for the eradication of Bang's disease among cattle in this state.

"Compiler's notes. . . .

". . .

"The words enclosed in parentheses so appeared in the 1939 Session Laws.

"Comp. leg. Cal. Food & Agric. Code §§ 10301–10492 (Deering).

"*Wash. Rev. Code* §§ 16.40.010–16.40.130." (Italics ours.)

not a distant forum. Unless such inconvenience is so great as to constitute a deprivation of due process, it will not overcome clear justifications for the exercise of jurisdiction. *Burger King Corp. v. Rudzewicz,* 105 S. Ct. at 2188; *McGee v. International Life Ins. Co.,* 355 U.S. 220, 2 L. Ed. 223, 78 S. Ct. 199 (1957); *Hirsch v. Blue Cross, Blue Shield,* 800 F.2d 1474, 1477 (9th Cir. 1986).

### III
### Conflict With Sovereignty of Defendant's State

Courts refrain from exercising jurisdiction when another state has expressed a substantially stronger sovereignty interest and that state's courts will take jurisdiction. *Nevada v. Hall,* 440 U.S. 410, 59 L. Ed. 2d 416, 99 S. Ct. 1182 (1979); *Raffaele v. Compagnie Generale Maritime, S.A.,* 707 F.2d 395, 398 (9th Cir. 1983). Idaho has not expressed a substantially stronger sovereignty interest in this case. *See Insurance Corp. of Ir., Ltd. v. Compagnie Des Bauxites De Guinee,* 456 U.S. 694, 702 n.10, 72 L. Ed. 2d 492, 102 S. Ct. 2099 (1982); *Cubbage v. Merchent,* 744 F.2d 665, 671 (9th Cir. 1984).

### IV
### Forum State's Interest

Washington obviously has an interest in protecting its citizens against the tortious conduct of others, including negligence. Similarly, Washington has demonstrated an abiding interest in protecting its citizens, as well as the State's livestock business, from a foreign state's negligently certified animals for export into Washington, especially as to diseases which can cause vast amounts of death and damage.[4] Numerous Washington court decisions to provide a Washington forum have resulted from just such a "state's interest" analysis. *See Werner v. Werner,* 84 Wn.2d 360,

---

[4]Many Washington statutes and regulations enforce safeguards against the spread of communicable disease in livestock. The current RCW 16.36.050 provides, in part:

"It shall be unlawful for any person, or any railroad or transportation company, or other common carrier, to bring into this state for any purpose any

526 P.2d 370 (1974); *Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp.,* 66 Wn.2d 469, 403 P.2d 351 (1965), *cert. denied,* 382 U.S. 1025 (1966); *Peter Pan Seafoods, Inc. v. Mogelberg Foods, Inc.,* 14 Wn. App. 527, 544 P.2d 30 (1975).

In *Werner v. Werner, supra,* jurisdiction was assumed even though the nonresident defendants had no personal connection within this state. The defendants were notaries public, residing in and licensed by the State of California, who allegedly negligently acknowledged a deed in California to real property located in Washington. The court allowed jurisdiction, based on Washington's interest in "the integrity of the documents" upon which the "whole of our

---

domestic animals without first having secured an official health certificate, certified by the state veterinarian of origin that such animals meet the health requirements promulgated by the director of agriculture of the state of Washington . . ."
Further, RCW 16.36.060 provides in part:

"It shall be unlawful for any person to wilfully hinder, obstruct, or resist the director of agriculture or any duly authorized representative, or any peace officer acting under him or them, when engaged in the performance of the duties or in the exercise of the powers conferred by this chapter, and it shall be unlawful for any person to wilfully fail to comply with or violate any rule, regulation or order promulgated by the director of agriculture or his duly authorized representatives under the provisions of this chapter."
Finally, the Washington Administrative Code 16–54 implements the livestock import provisions of RCW 16.36. Specifically, WAC 16–54–082 provides in part:

"All domestic bovine animals (including bison) entering Washington shall be moved on a permit issued by the office of the state veterinarian: *Provided,* That this permit requirement will be reviewed two years after the effective date to determine that the results obtained warrant the continuation of this requirement. All domestic bovine animals (including bison) shall meet the following requirements:

"(1) Tuberculosis. All beef and dairy cattle must originate from herds not under quarantine in a not less than modified accredited area.

"(2) Brucellosis health certificate requirements. All domestic bovine animals (including bison), except those consigned to quarantined registered feed lots, or to federally inspected slaughter plants for immediate slaughter, or beef breed cattle or slaughter only dairy breed cattle consigned to a state–federal approved livestock market, shall be accompanied by an official interstate health certificate and shall meet the following requirements:

"(a) Brucellosis test.

"(i) Cattle originating in class free or Class A states must be negative to an official brucellosis test conducted within thirty days prior to date of entry."

system of title registration hinges . . ." *Werner v. Werner, supra* at 367. The health and protection of Washington's commercial livestock population would seem to be at least as important an interest. *Cf. Golden Gate Hop Ranch, Inc. v. Velsicol Chem. Corp., supra.*

Under the circumstances of this case, there is no indication that affording the protection of a Washington court would interfere with Idaho's interest in seeing that its livestock, as well as its citizens, are safe from communicable livestock disease.

## V, VI
### Most Efficient Judicial Resolution and Effective Relief for Plaintiff

The court sitting in the place the injury occurred is ordinarily the most efficient forum, that court being most competent at interpreting the applicable law. *Raffaele v. Compagnie Generale Maritime, supra* at 399. Here the majority of witnesses reside in Washington.

Considering the avoidance of a multiplicity of suits and conflicting adjudications and the "relative convenience of the parties", the court looks at the forum state's interest in adjudicating the dispute and the most efficient judicial resolution of the controversy. *Cubbage v. Merchent, supra.*

Washington courts provide Grange Insurance with a convenient forum for seeking relief. There is no evidence that the State of Idaho would be unduly burdened by litigating this dispute in Washington.

## VII
### Alternative Forum

The record does not show that Grange Insurance has a remaining access to any other forum.

### CONCLUSION

The recent plurality decision of the United States Supreme Court in *Asahi Metal Indus. Co. v. Superior Court,* ___ U.S. ___, 94 L. Ed. 2d 92, 107 S. Ct. 1026 (1987) is consistent with the above analysis. In *Asahi,* the Court

held the contracts between the defendant, a Japanese components manufacturer, and the State of California were slight and insufficient to justify the heavy and unique burdens that would be placed on a Japanese corporation if forced to litigate in California. In making its decision, the Court balanced the seven *Cubbage* factors and concluded that an alternate forum and the "unique burdens" upon a Japanese corporation had significant weight in assessing the reasonableness of extending personal jurisdiction over international borders.

In the instant case, no such unique burdens exist. Such burden as may exist should be balanced with the integrity of Washington's economy and the safety of its citizens. These are factors which the *Asahi* Court implies should be weighed heavily in determining the reasonableness of extending personal jurisdiction. *Asahi Metal Indus. Co. v. Superior Court,* 94 L. Ed. 2d at 106.

Consequently, we conclude that, under the circumstances here presented, assumption of personal jurisdiction over the State of Idaho in this action would not offend "traditional notions of fair play and substantial justice" within the contemplation of the due process clause.

Because of our determination that RCW 4.28.185 affords jurisdiction over the State of Idaho, we do not consider Grange Insurance's contention that Idaho waived its jurisdiction defense by affirmatively seeking attorney's fees.

The decision of the Superior Court is reversed.

DORE and WILLIAMS, JJ. Pro Tem., concur.

Review granted by Supreme Court February 1, 1988.