[No. 24606-2-I.   Division One.   January 27, 1992.]

MARGIE L. WALKER, *Appellant*, v. BONNEY-WATSON COMPANY, ET AL, *Respondents*.

*A. Graham Greenlee*, for appellant.

*M. Katherine Julin* and *Julin, Fosso, Sage, McBride & Mason; Thomas J. Collins* and *Merrick, Hofstedt & Lindsey; William J. Schroeder* and *Paine, Hamblen, Coffin, Brooke & Miller* (*Ausey H. Robnett*, of counsel), for respondents.

PEKELIS, J. — Margie L. Walker appeals from the trial court order dismissing her complaint against Kootenai County and Rest Lawn Memorial Park, Inc., for lack of personal jurisdiction. Walker also challenges a separate order dismissing Bonney-Watson Company because of Walker's noncompliance with a court-imposed deadline for noting the case for trial.

I

Walker's husband, John Walker, died on about August 8, 1984, when he fell from a train traveling through Idaho. The decedent's body was discovered approximately 1 week later and was taken to the Kootenai Medical Center, where a preliminary examination was conducted by the coroner. The body was then sent to Montana for an autopsy. When the autopsy was completed, the body was returned to the custody of the Kootenai County Sheriff. Two plastic bags, one large, dark green bag containing the clothing of the

decedent, and a smaller white one containing some body parts from the autopsy, accompanied the body. Employees of Kootenai County signed a receipt which acknowledged the contents of the two plastic bags and then placed the white bag containing the body parts inside the green bag containing the decedent's clothing and placed the bags in their evidence room. The decedent's body was delivered to an Idaho funeral home, Rest Lawn Memorial Park, Inc.

An employee of Kootenai County telephoned Walker at her home in Seattle to ask if she wanted Rest Lawn to take care of the decedent's remains. Walker asked to have the clothes and personal effects sent to her. The county employee said he would have Rest Lawn send them to her. Kootenai County Sheriff's Deputy Gary Cuff subsequently delivered the plastic bag to Rest Lawn. In his affidavit, Deputy Cuff stated that he handed the bags directly to David Mullen, a Rest Lawn employee, and specifically told Mullen that the bags contained body parts.

Deputy Cuff later telephoned Rest Lawn and indicated that he had spoken with Walker, who requested the remains be sent to Bonney-Watson, a funeral home in Seattle. An employee of Rest Lawn also talked to Walker on the telephone and requested authority to cremate the body.

Delmar Pederson, an employee of Bonney-Watson, called Rest Lawn and told them that Walker did not want the decedent's remains cremated in Idaho and that arrangements had been made to deliver the remains and personal effects to Bonney-Watson in Seattle. An agent of Bonney-Watson, Herb Thompson, went to Rest Lawn, picked up the body and the plastic bag, and delivered them to Bonney-Watson in Seattle. An employee of Bonney-Watson delivered the large green plastic bag labeled "Personal Effects of John Mack Walker" to Walker's house. Walker opened the green bag and the contents of the white bag tumbled out.

On February 18, 1986, Walker filed a complaint in King County Superior Court alleging Kootenai County, Rest Lawn, and Bonney-Watson negligently delivered her husband's remains, thus causing her serious emotional trauma.

In October of 1987, the trial court granted partial summary judgment dismissing Kootenai County and Rest Lawn for lack of personal jurisdiction. This court originally granted discretionary review and reversed the trial court. However, when the Supreme Court remanded the case for further consideration in light of *Grange Ins. Ass'n v. State*,[1] this court, by order dated December 7, 1988, withdrew its decision and denied discretionary review. Thus, the trial court's dismissal of the County and Rest Lawn remained in effect.

On April 20, 1989, Judge Dale Ramerman issued an order giving Walker until June 15 to note her action against Bonney-Watson for trial, arbitration, or stay pending appeal. Walker, however, did not note the matter for trial until June 28, 13 days after the court-imposed deadline had passed. In an "order upon review of joint status report" entered on July 7, Judge Charles S. Burdell, Jr., dismissed the action without prejudice for failure to comply with the April 20 order. Reconsideration was denied.

## II

On appeal, Walker contends that the trial court erred in dismissing Kootenai County and Rest Lawn for lack of jurisdiction. She claims that specific jurisdiction over Kootenai County and Rest Lawn exists under the tortious act provision of this State's longarm statute, RCW 4.28-.185(1)(b).[2]

This court reviews superior court jurisdictional rulings de novo when the underlying facts are undisputed. *Hein v. Taco Bell, Inc.*, 60 Wn. App. 325, 328, 803 P.2d 329 (1991). It is the party asserting jurisdiction who has the burden of

---

[1] 110 Wn.2d 752, 757 P.2d 933 (1988), *cert. denied*, 490 U.S. 1004, *reh'g denied*, 490 U.S. 1085 (1989).

[2] RCW 4.28.185 provides in part:

"(1) Any person, whether or not a citizen or resident of this state, who . . . does any of the acts in this section enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

" . . . .

"(b) The commission of a tortious act within this state;"

proof. *Hein*, 60 Wn. App. at 328. For purposes of determining jurisdiction, the allegations in the plaintiff's complaint must be taken as correct. *MBM Fisheries, Inc. v. Bollinger Mach. Shop & Shipyard, Inc.*, 60 Wn. App. 414, 418, 804 P.2d 627 (1991).

■ Recently, our Supreme Court has outlined the process for analyzing whether jurisdiction exists under RCW 4.28-.185. In *Grange Ins. Ass'n v. State, supra*, the court established a 2-prong test which asks: (1) Does the statutory language purport to extend jurisdiction, and (2) would imposing jurisdiction violate due process?

Applying the first prong of *Grange*, the language of RCW 4.28.185(1)(b) does in fact purport to extend jurisdiction over Kootenai County and Rest Lawn. It is settled law that a tortious act is deemed to have occurred in Washington under this provision when the injury occurs in this state. *Grange Ins. Ass'n*, 110 Wn.2d at 757; *Smith v. York Food Mach. Co.*, 81 Wn.2d 719, 722, 504 P.2d 782 (1972); *Thiry v. Atlantic Monthly Co.*, 74 Wn.2d 679, 445 P.2d 1012 (1968). Because the severe emotional injuries alleged in Walker's complaint were sustained inside her Seattle home, the statutory requirement has been satisfied.

■■ The second prong of *Grange* requires that we determine whether the assertion of jurisdiction over the County and Rest Lawn would violate due process. This determination must be based upon an analysis of the following three criteria:

> (1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation.

(Footnotes omitted.) *Tyee Constr. Co. v. Dulien Steel Prods., Inc.*, 62 Wn.2d 106, 115-16, 381 P.2d 245 (1963).

■ Under the first criterion, a nonresident defendant must purposefully avail itself of the privilege of conducting activities within the forum state, thereby invoking the benefits and protections of its laws. *Hanson v. Denckla*, 357 U.S. 235, 253, 2 L. Ed. 2d 1283, 78 S. Ct. 1228, *reh'g denied*, 358 U.S. 858 (1958). The quality and nature of the defendant's activities determine whether the contacts are sufficient, not the number of acts or mechanical standards. *Nixon v. Cohn*, 62 Wn.2d 987, 994, 385 P.2d 305 (1963).

Walker claims that the County and Rest Lawn have purposefully directed their activities at Washington because both knew her husband's remains were being shipped to this state, citing *Grange Ins. Ass'n*. We disagree.

In *Grange*, an insurer brought an action against the State of Idaho in a Washington court as the assignee of Washington farmers who had been damaged when Idaho's state brucellosis service failed to detect the existence of the disease in cattle sold to Washington farmers. The trial court dismissed the case for lack of personal jurisdiction and this court reversed and remanded. *Grange Ins. Ass'n v. State*, 49 Wn. App. 551, 563, 744 P.2d 366 (1987), *rev'd*, 110 Wn.2d 752, 757 P.2d 933 (1988), *cert. denied*, 490 U.S. 1004, *reh'g denied*, 490 U.S. 1085 (1989).

On review, the Supreme Court reversed and reinstated the trial court's dismissal for lack of personal jurisdiction. The court's analysis focused on whether Idaho's knowledge that the cattle being tested were destined for sale to a Washington buyer was sufficient by itself to show that Idaho acted purposefully under the first due process element. The court first observed that prior Washington decisions had found purposeful minimum contacts where nonresident manufacturers placed their products in the stream of interstate commerce or where nonresident retailers could be charged with knowledge that a transaction might have consequences in Washington. *Grange*, 110 Wn.2d at 761-62. The court, however, declined to apply

those principles, stating that "[w]hile the rule makes sense with respect to manufacturers and retailers, it does not make sense when applied to a state governmental agency performing a service that benefited the forum state." *Grange*, 110 Wn.2d at 762.

■ Instead, the *Grange* court adopted the analysis in *Hogan v. Johnson*, 39 Wn. App. 96, 98, 692 P.2d 198 (1984) and cases from other jurisdictions which distinguish providers of unsolicited medical services from commercial defendants. As the opinion explains:

> [t]his distinction is based on the theory that the rendition of services is more personal in nature than is the sale of goods, such that the location where the services are performed is of greater jurisdictional importance than is the location where a product is bought.

(Citations omitted.) *Grange*, 110 Wn.2d at 763. Looking to the facts before it, the court found that "[a]ll of Idaho's acts were conducted within its own state borders and it did not solicit business from the Washington buyers." *Grange*, 110 Wn.2d at 764. Thus, the court concluded that Idaho did not purposefully avail itself of the benefits of the Washington markets under the first due process criterion.

We see no distinction between the services provided by the State of Idaho in *Grange*, and those provided here by Kootenai County. All of the County's acts were performed in Idaho for the primary purpose of protecting the health, safety, and welfare of its own citizens. The County solicited no business from Walker, nor directed any other activities at this State which would establish the requisite purposeful availment.

■ Turning to the actions of Rest Lawn, we do not read *Grange* as limiting the commercial/unsolicited service distinction to cases involving only nonresident governmental entities. The court's analysis is equally applicable to nongovernmental service providers who have not purposefully directed their activities at a Washington plaintiff.

■ Here, Rest Lawn's actions were insufficient to establish jurisdiction. There is nothing in the record to establish that Rest Lawn purposefully sought or received any compensation from Walker for its services. Rest Lawn's holding of the decedent's remains was undertaken solely at the request of the Kootenai County Sheriff's office. There is no evidence that its actions were for the purpose of soliciting Walker's business.

Accordingly, we hold that the services provided by the County and Rest Lawn do not establish the first due process criterion of purposeful availment. Because this basis alone supports the trial court's order of dismissal, we do not address whether the remaining due process criteria have been met.

### III

Rest Lawn has requested attorneys' fees on appeal pursuant to RCW 4.28.185(5). This provision reads in part:

> In the event the defendant is personally served outside the state on causes of action enumerated in this section, and prevails in the action, there may be taxed and allowed to the defendant as part of the costs of defending the action a reasonable amount to be fixed by the court as attorneys' fees.

■ Recently, the Supreme Court construed RCW 4.28-.185(5) as authorizing an award of attorneys' fees to a foreign defendant who obtains a dismissal for want of specific jurisdiction. *Scott Fetzer Co. v. Weeks*, 114 Wn.2d 109, 786 P.2d 265 (1990). Because we affirm the order of dismissal here, Rest Lawn is entitled to an award of reasonable attorneys' fees pursuant to RAP 18.1.

### IV

Walker also challenges the trial court's sua sponte dismissal without prejudice of Bonney-Watson because of her noncompliance with the June 15 deadline for noting the matter for trial. Walker asserts that she was unfairly prejudiced because the case was noted for trial before the order of dismissal was entered and because the Idaho statute of limitations had expired, thus preventing her from refiling.

As a preliminary matter, since no motion to dismiss was filed by Bonney-Watson, we assume the case came before Judge Burdell pursuant to the administrative practices used at superior court for determining case status. In any event, whether Judge Burdell had the authority to dismiss the action for noncompliance with Judge Ramerman's order is governed by CR 41(b), which provides in part:

> **(b) Involuntary Dismissal; Effect.** For failure of the plaintiff to prosecute or to comply with these rules or *any order of the court*, a defendant may move for dismissal of an action or of any claim against him.
>
> (1) *Want of Prosecution on Motion of Party.* Any civil action shall be dismissed, without prejudice, for want of prosecution whenever the plaintiff . . . neglects to note the action for trial or hearing within 1 year after any issue of law or fact has been joined . . . Such motion to dismiss shall come on for hearing only after 10 days' notice to the adverse party. *If the case is noted for trial before the hearing on the motion, the action shall not be dismissed.*

(Italics ours.)

█ Under the first sentence of CR 41(b), a trial court may exercise its discretion to dismiss an action based on a party's willful noncompliance with a reasonable court order. *See Jewell v. Kirkland*, 50 Wn. App. 813, 750 P.2d 1307 (1988). However, the first sentence of the rule does not authorize a court to dismiss an action when dismissal is prohibited under the language of CR 41(b)(1). Thus, where a case was noted for trial before the motion to dismiss was heard, our Supreme Court held that an order of dismissal for want of prosecution was precluded by CR 41(b)(1), notwithstanding the first sentence in CR 41(b). *Snohomish Cy. v. Thorp Meats*, 110 Wn.2d 163, 170, 750 P.2d 1251 (1988).

We discern no significant difference between the circumstances in *Snohomish County* and those here. It would be both illogical and unfair to allow the trial court to do on its own motion what CR 41(b)(1) would prohibit upon a party's motion. Walker noted the matter for trial nearly 10 days before the order of dismissal was entered. Once she had done so, Judge Burdell could not subsequently exercise his discretion and dismiss the case sua sponte.

Accordingly, we affirm the dismissal of Kootenai County and Rest Lawn for lack of personal jurisdiction, reverse the dismissal of Bonney-Watson, and remand the matter for trial.

GROSSE, C.J., concurs.

FORREST, J. (concurring) — I concur in the reasoning and judgment of the majority opinion. I wish, however, to emphasize two considerations. Not only did Rest Lawn and the County refrain from soliciting business or purposely availing themselves of Washington law, but both were under a positive legal duty, independent of any contract, to return the remains and effects to the plaintiff in Washington. Performing such legal obligation does not constitute a voluntary transaction with the Washington resident. Additionally, I would point out that in retrieving the remains and property from Idaho, Bonney-Watson was acting as Walker's agent so that Rest Lawn did not even legally ship or deliver the items into Washington.