# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | |
|---|---|
| L.D.M. WORLDWIDE CORPORATION, a Florida corporation, | )<br>)<br>) No. 67404-8-I<br>)<br>) DIVISION ONE<br>)<br>) UNPUBLISHED OPINION<br>) |
| Respondent | |
| v. | |
| METIN DALMAN; SIMURG MEDIA, an alter ego of Metin Dalman, jointly, severally, and individually as partners in fact and implied in law, | |
| Defendants, | |
| RICHARD EROG; and BROADCAST FACILITY, an unincorporated alter ego of Richard Erog jointly, severally, and individually as partners in fact and implied in law, | |
| Appellant. | FILED: February 3, 2014 |

APPELWICK, J. — Erog appeals the denial of his motion to vacate the default judgment entered against him. He argues that he had insufficient contacts with Washington and that he was never properly served the summons and complaint. We affirm the trial court's exercise of jurisdiction and remand for an evidentiary hearing on the issue of service.

## FACTS

This appeal arises from a contract dispute between Richard Erog, a Nevada resident, and LDM Worldwide Corporation (LDM), a corporation whose principal place

of business is Washington. The parties arranged for LDM to provide media production equipment and services for two sporting events: a California motocross competition and the South Africa World Cup.

On May 12, 2010, LDM e-mailed Erog that a third party had passed on his information for an event in Los Vegas. LDM wrote, "I can supply all that you need. . . . Please give me a few hours to get a quote together." Erog responded that he hoped to get a quote that night. The following day, Erog e-mailed LDM saying, "Here is the list. Please check and get back to me."

The record does not contain a singular document memorializing the parties' business relationship. However, it is clear that the parties subsequently arranged for LDM's service for the motocross event in California. On May 17, LDM sent an invoice to Erog for services for the event. Erog wired full payment of this invoice from his Nevada account to LDM's Washington account.

On May 19, Metin Dalman[1] approached LDM about a second event, writing "As were [sic] spoken on the phone, we have several projects [in] South Africa. . . . For this I may need to hire additional [equipment]. . . . Can you help me on this [p]lease." LDM responded with an estimate. The parties negotiated over price, and LDM provided the requested equipment. On June 3, LDM sent an invoice to Erog for the deposit on the

---

[1] Metin Dalman, who is not involved in this appeal, worked with Erog on the projects with LDM. Together, the pair coordinated with LDM. Erog thus is not insulated from the effect of Dalman's contacts with Washington. Cf. FutureSelect Portfolio Mgmt., Inc. v. Tremont Grp. Holdings, Inc., 175 Wn. App. 840, 892-93, 309 P.3d 555 (2013) (finding that it makes good policy sense to impute to a corporation the contacts of its agent). Erog does not argue otherwise.

equipment for the South Africa event. Erog again wired payment to LDM's Washington account.

Erog and LDM continued to correspond about equipment and timing for the two events. Negotiations began for a third event in Denver, but the deal fell apart. The relationship eventually soured over the lack of subsequent payments.

LDM ultimately brought suit for breach of contract. Erog did not answer the complaint. LDM then moved for an order of default and entry of default judgment, which the court granted on December 7, 2010.

On May 6, 2011, Erog filed a motion to vacate the default judgment. He argued that he had insufficient contacts with Washington, and that he had never been served a copy of the summons and complaint. He produced three affidavits maintaining that neither he nor anyone at his home received service on the day in question. In response, LDM offered a detailed sworn affidavit from the process server affirming that he properly served Erog.

The court denied Erog's motion, finding that both service and the exercise of jurisdiction were proper. Erog appeals.

## DISCUSSION

### I. Minimum Contacts

Washington's long-arm statute provides jurisdiction over out-of-state defendants who transact business within this state. RCW 4.28.185(1)(a). The party asserting jurisdiction has the burden of establishing its requirements by prima facie evidence. In re Marriage of David-Oytan, 171 Wn. App. 781, 798, 288 P.3d 57 (2012), review denied,

177 Wn.2d 1017, 304 P.3d 114 (2013). Under the long-arm statute, a plaintiff must demonstrate three factors to establish jurisdiction over a foreign defendant:

> "(1) The nonresident defendant or foreign corporation must purposefully do some act or consummate some transaction in the forum state; (2) the cause of action must arise from, or be connected with, such act or transaction; and (3) the assumption of jurisdiction by the forum state must not offend traditional notions of fair play and substantial justice, consideration being given to the quality, nature, and extent of the activity in the forum state, the relative convenience of the parties, the benefits and protection of the laws of the forum state afforded the respective parties, and the basic equities of the situation."

Shute v. Carnival Cruise Lines, 113 Wn.2d 763, 767-68, 783 P.2d 78 (1989) (quoting Deutsch v. W. Coast Mach. Co., 80 Wn.2d 707, 711, 497 P.2d 1311 (1972)). Erog contends that LDM did not demonstrate any of the three factors.

A. Purposeful Availment

The first prong of the long-arm jurisdiction test is purposeful availment. Id. The evaluation of purposeful availment is highly fact-specific and can turn on a number of factors. See 14 KARL B. TEGLAND, WASHINGTON PRACTICE: CIVIL PROCEDURE § 4:8, at 72-73 (2d ed. 2009).

A defendant may purposefully avail himself of a forum state by initiating a transaction with the plaintiff in contemplation that some phase of it will take place in that jurisdiction. SeaHAVN, Ltd. v. Glitnir Bank, 154 Wn. App. 550, 565, 226 P.3d 141 (2010). In Peter Pan Seafoods, Inc. v. Mogelberg Foods, Inc., 14 Wn. App. 527, 530, 544 P.2d 30 (1975), the court upheld jurisdiction where an out-of-state defendant affirmatively sought out a business relationship with a Washington corporation. There, the defendant solicited a series of sales from the plaintiff, the defendant traveled to Washington to inspect the plaintiff's facilities, and the goods were delivered "F.O.B.

Seattle." Id. The court, focusing on the defendant's purposeful actions in initiating the business relationship, found that this constituted purposeful availment. Id. at 530-31.

Similarly, in Crown Controls, Inc. v. Smiley, 47 Wn. App. 832, 834, 839, 737 P.2d 709 (1987), overruled on other grounds by 110 Wn.2d 695, 699, 756 P.2d 717 (1988), the court upheld jurisdiction where the defendant reached out to the plaintiff, a manufacturer's representative, to purchase chemical controls equipment. The parties conducted several telephone discussions. Id. The plaintiff ordered multiple products for the defendant, some of which were manufactured in Washington, some of which were not. See id. at 834, 836. Still, the court found purposeful availment, emphasizing the defendant's purposeful acts in pursuing a business relationship with a Washington corporation. See id. at 837-39 (analyzing cases involving defendants intentionally seeking transactions with Washington businesses).

Even if a defendant does not initiate the business contact, that defendant may still be subject to jurisdiction in Washington if a business relationship subsequently arises. Sorb Oil Corp. v. Batalla Corp., 32 Wn. App. 296, 299, 647 P.2d 514 (1982). Mere execution of a contract with a Washington resident will not suffice; the court must examine the circumstances of the entire transaction, including contemplated future consequences and the parties' actual course of dealing. SeaHAVN, 154 Wn. App. at 565-66. In Sorb Oil, the defendant was a Texas corporation with no office or agent in Washington. 32 Wn. App. at 298. The plaintiff, a Washington corporation, replaced the defendant's previous oil product distributor. Id. The defendant subsequently placed multiple telephone orders from the plaintiff over a 20 month period. Id. at 300. The court found it immaterial that the plaintiff initiated the contact and that the products did

not ship from Washington. Id. at 300-01. It was key that the defendant engaged in purposeful conduct in Washington in furtherance of business that was "more than de minimis." See id. at 301.

By contrast, in SeaHAVN, the court declined to exercise jurisdiction where a defendant entered the state to undertake a business transaction. See 154 Wn. App. at 569. There, the defendant's only contact with Washington consisted of attending two meetings and signing an agreement in Seattle. Id. at 566. Neither the plaintiff nor the defendant was a Washington citizen, and the transaction made virtually no impact in the state. Id. The court concluded that this contact alone did not create an ongoing business relationship in Washington, and the defendant did not purposefully avail itself of the forum. Id. at 569.

Thus, in evaluating purposeful availment, the "salient factor" is whether the defendant negotiates an ongoing business relationship that has substantive effects and creates future obligations in Washington. See Precision Lab. Plastics, Inc. v. Micro Test, Inc., 96 Wn. App. 721, 727 n.5, 981 P.2d 454 (1999). In Precision, the parties negotiated exclusively by telephone and fax. Id. at 727. The court noted that, in "this electronic era," it was unimportant that the defendant had no office in Washington and never entered the state. Id. 728-29. Instead, it was significant that the parties' contract required the plaintiff to create a custom product in Washington to accommodate the defendant's needs over a three year period. Id. at 727-28. The court held that, viewing the totality of the business relationship, the defendant formed a contract that contemplated future consequences and created a continuing relationship with a Washington business. Id. at 727.

The Ninth Circuit has taken a similar approach. For example, in <u>Boschetto v. Hansing</u>, 539 F.3d 1011, 1014 (9th Cir. 2008), the court considered a dispute over an electronically conducted contract. The plaintiff, a California resident, sued the Wisconsin defendant over a onetime eBay car purchase. <u>Id.</u> The defendant advertised the car online, the plaintiff purchased the car online, the parties communicated only electronically, and the plaintiff arranged to pick up the car in Wisconsin. <u>Id.</u> The court found jurisdiction improper, because this was a "'one-shot affair,'" without any ongoing obligations or substantial business performed in California. <u>Id.</u> at 1017 (quoting <u>CompuServe, Inc. v. Patterson</u>, 89 F.3d 1257, 1265 (6th Cir. 1996)).

Conversely, in <u>Roth v. Garcia Marquez</u>, 942 F.2d 617, 622 (9th Cir. 1991), the court found that the contract's future consequences justified the exercise of jurisdiction. There, the parties negotiated over the movie rights to a popular novel. <u>Id.</u> at 618. The court noted that the plaintiff, a California movie producer, made the predominant efforts to pursue the contract, and the defendants, neither of whom were American, had only a minimal physical presence in the forum. <u>Id.</u> at 619, 622. The court also observed that the movie would be filmed in Brazil—not California, where the plaintiff bought suit. <u>Id.</u> at 622. However, the contract contemplated additional work, such as editing, production, and advertising, which would take place in California. <u>Id.</u> The checks that the defendant would receive would be based on that work in the forum. <u>Id.</u> Thus, the "'economic reality'" was that sufficient purposeful availment existed. <u>Id.</u> (quoting <u>Haisten v. Grass Valley Med. Reimbursement Fund</u>, 784 F.2d 1392, 1398 (9th cir. 1986)).

Here, the burden lies on LDM to demonstrate that Erog purposely availed himself of the Washington forum. David-Oytan, 171 Wn. App. at 798. LDM first contends that Erog purposefully availed himself of the forum by soliciting the business relationship. While LDM made initial contact, LDM argues that its first e-mail was merely a statement of capability, and Erog's request for a quote was the true initiation of the business relationship. Regardless of who initiated the relationship, Erog solicited LDM's business for two subsequent events. This suggests availment on Erog's part, and separates the present case from the one-shot affair in Boschetto.

LDM also alleges that jurisdiction is proper because the parties electronically negotiated and consummated a contract through communications in Washington. This is not persuasive. See Precision, 96 Wn. App. at 727 n.5 ("[T]he locus of [electronic] negotiations culminating in a contract is not dispositive."). But, the fact that communications were made exclusively via phone and e-mail is not fatal for jurisdiction either. See, e.g., id. at 727; Crown Controls, 47 Wn. App. at 834.

LDM further argues that partial performance occurred in Washington by virtue of its logistical arrangements. In many cases finding purposeful availment without the defendant's physical presence, some or all of the plaintiff's performance took place in the forum. For example, in Precision, the parties' contract required specially customized manufacturing performed in Washington. 96 Wn. App. at 723, 728. In Crown Controls, at least one item that the defendant ordered was from Washington and shipped "'F.O.B. Bellevue.'" 47 Wn. App. at 836. And, in Roth, the event was a movie that was shot out of state, but the postproduction services were performed by the plaintiff in state. 942 F.2d at 622.

8

Erog hired LDM to provide media production equipment and services for the events. For the California event, LDM arranged for and provided mobile TV production facilities, personnel, and broadcast equipment rentals. LDM made all arrangements associated with its performance in Washington. Erog subsequently requested broadcast equipment rentals for the South Africa event. LDM arranged for the equipment rental and shipping for that event. Again, LDM made all arrangements associated with its performance in Washington. The parties also began to negotiate for LDM to provide a crew and equipment for a third event, in Denver.

In sum, LDM performed preproduction services in Washington for events held out of state. As such, LDM's performance in Washington was not merely incidental preparation, but a crucial component of the parties' contract. This is analogous to the contracts in Crown Controls, Sorb Oil, or Roth: while the work involved out-of-state resources and locations, an important facet of the plaintiffs' performance occurred in the forum, and the defendants derived benefit from that performance. This is sufficient to constitute purposeful availment.

### B. Arising From the Transaction

The second prong, known as the "'but for'" test, requires that the cause of action arise from or be connected to a transaction in Washington. Shute, 113 Wn.2d at 767-68, 772. Here, the cause of action arises directly from the transaction between the parties. This satisfies the "but for" prong.

### C. Fair Play and Substantial Justice

The final prong asks whether an exercise of jurisdiction offends traditional notions of fair play and substantial justice. Id. In evaluating this prong, courts consider

the quality, nature, and extent of the defendant's activity in Washington; the relative convenience of the parties in bringing an action in this forum; and the basic equities of the situation. Precision, 96 Wn. App. at 728.

In Precision, the court concluded that the exercise of jurisdiction satisfied this test. Id. at 731. It noted that the defendant's activities created an ongoing business relationship and future obligations with a Washington corporation and that it was "of little consequence" that the relationship quickly deteriorated. Id. at 729. The court further concluded that neither party suffered a sufficient inconvenience to impact its analysis:

> We cannot say that [the respondent] will be unduly inconvenienced by being hauled into Washington's courts anymore than [the appellant] has been inconvenienced by responding in the Georgia courts. By virtue of its ongoing business relationship with [the appellant], [the respondent] enjoys the protection and benefits of Washington's laws governing corporations and sales. Further, "[t]he protection of legal rights of Washington residents is a legitimate state interest."

Id. at 729-30 (final alteration in original) (quoting Sorb Oil Corp., 32 Wn. App. at 301).

Here, Erog established a business relationship based on multiple transactions with LDM that relied heavily on LDM's performance in Washington. We find no evidence of particular inconvenience or inequity beyond Erog's allegations of insufficient contacts. We do not find that an exercise of jurisdiction here would offend traditional notions of fair play and justice.

The trial court did not err in exercising jurisdiction.

## II. Evidence of Service

Erog argues that he was never properly served the copy of the summons and complaint. Accordingly, he contends that the default judgment was void and that the court should have vacated the judgment under CR 60(b)(5).

10

Courts have a mandatory, nondiscretionary duty to vacate void judgments. Ahten v. Barnes, 158 Wn. App. 343, 350, 242 P.3d 35 (2010). Thus, we review de novo a trial court's decision to grant or deny a CR 60(b) motion to vacate a default judgment for want of jurisdiction. Id. A judgment entered without proper service of the summons and complaint is void for lack of jurisdiction. Am. Express Centurion Bank v. Stratman, 172 Wn. App. 667, 672, 242 P.3d 35 (2012). A plaintiff has the initial burden to produce an affidavit of service that on its face shows that service was properly carried out. Id. If the plaintiff makes this showing, the burden then shifts to the defendant to prove by clear and convincing evidence that service was improper. Id.

An affidavit of service that is regular in form and substance is presumptively correct. Leen v. Demopolis, 62 Wn. App. 473, 478, 815 P.2d 269 (1991). Personal service may be effected upon an individual or upon a foreign corporation's agent. RCW 4.28.080(10), (15). Personal service to may be effected upon any party outside the state. RCW 4.28.180.

LDM's affidavits demonstrate that a process server delivered a copy of the summons and complaint to Erog as an individual and as an agent of Broadcast. This creates a prima facie case and shifts the burden to Erog to demonstrate clear and convincing evidence that service was improper. Clear and convincing evidence exists when the evidence shows the ultimate fact at issue to be highly probable. In re Dependency of K.S.C., 137 Wn.2d 918, 925, 976 P.2d 113 (1999).

Erog makes two challenges to LDM's original affidavits. He first alleges that the affidavits failed to show exactly who was served and how. However, each affidavit states that service of process was delivered to Richard Erog at his Las Vegas address.

11

Erog also asserts that the affidavits were improper under RCW 9A.72.085. But, that statute applies to unsworn statements, and the process server's affidavits were sworn and notarized.

Erog further maintains that he was never served a copy of the summons and complaint. He relies on three affidavits—his own, his babysitter's, and his friend's—to demonstrate that neither he nor anyone at his home received service on September 15, 2010. His declaration states that he was not at home that night, but was out visiting with friends. He avers that he did not find any paperwork when he returned, and his babysitter did not inform him that any deliveries occurred. The other two declarations corroborate this information. In response to Erog's declarations, LDM produced a detailed sworn affidavit from the process server that provided supporting details based on notes he took at the time of service.

In Leen, the court considered the clear and convincing evidence test in the case of conflicting affidavits. 62 Wn. App. at 478. There, the process server stated that he personally served the defendant, and other evidence in the record corroborated his affidavit. Id. at 479. In response, the defendant submitted his own declaration that he was not personally served, but later found the complaint in his mailbox. Id. at 479-80. He also provided declarations from two other people stating that he was at a restaurant with them at the time of alleged service. Id. at 480. However, the defendant did not himself attest that he was at the restaurant at that time. Id. The court found that this did not constitute clear and convincing evidence. Id.

The court again considered conflicting affidavits in Woodruff v. Spence, 76 Wn. App. 207, 883 P.2d 936 (1994). There, the defendant filed a declaration that he was out

12

of town when the process server's affidavit stated that service occurred. Id. at 210. He also provided declarations from his son and a neighbor, both of whom were around his residence that day and did not observe anyone else on the property. Id. The court did not find that this constituted clear and convincing evidence. See id. But, it did find that there was an issue of fact that required an evaluation of witness credibility. Id. As a result, the court remanded for an evidentiary hearing to resolve the issue. Id. The court distinguished Leen, where no hearing was needed because the affidavit of service had corroborating evidence and the defendant's declaration was equivocal. See id. at 210 n.1.

Erog's declarations contradict the process server's affidavit unequivocally. Even if this constitutes a genuine issue of fact, it does not meet the standard of clear and convincing evidence under Woodruff and Leen. This is insufficient to demonstrate that the judgment was void.

However, Woodruff also establishes that a trial court may abuse its discretion by failing to hold an evidentiary hearing when affidavits create an issue of fact that can be resolved only by determining witness credibility. 76 Wn. App. at 210. Erog's declaration was unequivocal about his whereabouts, unlike the defendant's in Leen. And, as in Woodruff, Erog's declarations directly conflict with the process server's. There is no way to reconcile the two without finding that one is false. This creates an issue of fact that cannot be resolved without a determination of witness credibility.

We affirm the trial court's exercise of jurisdiction and remand for an evidentiary hearing on the issue of service.

_Appelwick, J._

WE CONCUR:

_Leach, C.J._     _Cox, J._