# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| LAURA DANIELS and JOHN HALVERSON, | No. 58952-4-II |
| Appellants, | |
| v. | |
| GEORGE SOMMERS, DBA INTERSTATE JUDGMENT ENFORCEMENT, an Individual, and DAVID SWANSON, an individual, | PUBLISHED OPINION |
| Respondents. | |

MAXA, J. – Laura Daniels and John Halverson appeal the trial court's order granting summary judgment in favor of George Sommers and David Swanson and dismissing all of Daniels' and Halverson's claims with prejudice based on a lack of specific personal jurisdiction.

In 2009, Daniels retained an attorney to handle her dissolution and child custody action in California. Daniels and Halverson later married, and they moved to Oregon and then to Vancouver, Washington. The attorney subsequently filed a complaint in a California court against Daniels and Halverson for breach of the retainer agreement, and in 2011 the California court entered a default judgment against them.

Several years later, the attorney assigned the judgment to Sommers. Halverson worked at a Lowe's store in Vancouver. Sommers applied for a wage garnishment order against Halverson in a California court, and the order was served on Lowe's in California. Halverson's Washington wages were garnished. Sommers later assigned the judgment to Swanson. Swanson

applied for a wage garnishment order in a California court, and the order was served on Lowe's in California. Halverson's Washington wages again were garnished.

Daniels and Halverson filed suit against Sommers and Swanson in Washington, alleging that they violated the Consumer Protection Act (CPA), chapter 19.16 RCW, and they committed acts of fraudulent or negligent misrepresentation. The trial court dismissed their claims with prejudice, ruling that it did not have personal jurisdiction over Sommers and Swanson.

We conclude that for purposes of a CR 12(b)(2) motion, (1) the trial court had specific personal jurisdiction over Sommers and Swanson under RCW 19.86.160, the CPA's long arm provision, for Daniels' and Halverson's claims that Sommers and Swanson violated the CPA by acting as unlicensed debt collectors and engaging in deceptive practices; (2) the trial court had specific personal jurisdiction over Sommers and Swanson under RCW 4.28.185(1), Washington's general long arm statute, for Daniels' and Halverson's claims that Sommers and Swanson committed acts of fraud; and (3) the exercise of specific personal jurisdiction over Sommers and Swanson does not violate due process because they intentionally initiated a garnishment that would be executed in Washington with knowledge that Daniels and Halverson would be harmed in Washington. Therefore, we hold that the trial court erred in granting the CR 12(b)(2) motion regarding Daniels' and Halverson's claims that Sommers and Swanson violated the CPA by acting as unlicensed debt collectors and engaging in deceptive practices, and their tort claims.

However, we affirm the trial court's dismissal of Daniels' and Halverson's claims that Sommers and Swanson violated the CPA by failing to comply with Washington garnishment laws and violated the Fair Debt Collection Practices Act (FDCPA), 15 U.S.C. § 1692, because Daniels and Halverson fail to provide any meaningful argument regarding jurisdiction for these

claims. But we agree with both parties that the dismissal of these claims should be without prejudice.

Accordingly, we affirm in part, reverse in part, and remand to the trial court for further proceedings consistent with this opinion.

FACTS

*Background*

Daniels and Halverson are a married couple, who now live in Washington. Halverson works at Lowe's in Vancouver. Sommers and Swanson live in California.

Before moving to Washington, Daniels lived in California. In 2009, Daniels signed a retainer agreement with attorney Paul Palant to represent her in dissolution and child custody proceedings in California involving her then spouse. Sometime before 2011, Daniels and Halverson were married.

In 2011, Palant filed a complaint in a California superior court against Daniels and Halverson for breach of the retainer agreement that Daniels signed. He claimed damages of $8,000, interest, and attorney fees. Neither Daniels nor Halverson received notice of this lawsuit because it was served at a location where they no longer lived. The California court entered a default judgment in the amount of $10,955 against Daniels and Halverson in the action. Daniels and Halverson were unaware of the default judgment.

In October 2019, Palant assigned the judgment to Sommers, who operated a business called Interstate Judgment Enforcement. In July 2020, Sommers filed a writ of execution, which listed the judgment amount as $20,425.40. Sommers entered an address in Vancouver for Halverson. He entered for Daniels her former father-in-law's address in South Lake Tahoe, California. At the time, the last address of record in California court records for Daniels and

Halverson was in Sandy, Oregon, which is where they lived before they moved to Washington. At some point, the last address of record was changed to the South Lake Tahoe address. In November, Sommers filed a memorandum of costs and declaration of accrued interest, on which he entered the South Lake Tahoe address for both Daniels and Halverson. Halverson had never lived at the South Lake Tahoe address and Daniels had not lived there since 2006.

In early 2021, Sommers filed an application to renew the judgment. At this time, the judgment amount was $21,546.87. He again sent notice to the South Lake Tahoe address.

In May 2022, Sommers filed another memorandum of costs and a declaration of accrued interest, listing a renewed judgment of $24,244.66. He also filed a writ of execution. He sent notice to Daniels and Halverson at two different addresses in Vancouver. Daniels and Halverson lived at one of the addresses, but not the other. This was the first notice Daniels and Halverson had received of the default judgment.

Sommers submitted an application for wage garnishment in a California superior court. In August, the garnishment order was served on Lowe's in California. This caused the garnishment of Halverson's wages at Lowe's in Washington.

In October, Daniels and Halverson filed a motion to set aside or vacate the default judgment against them related to the Palant judgment. The trial court denied their motion because the statute of limitations had expired six months after the entry of the judgment, which had occurred 11 years earlier.

In November, Sommers assigned the judgment to Swanson. In February 2023, Swanson submitted an application for wage garnishment in a California superior court. Garnishment paperwork again was served on Lowe's in California. Halverson's wages were garnished. Halverson did not receive any notice of the garnishment order.

No. 58952-4-II

*Daniels' and Halverson's Lawsuit*

In June 2023, Daniels and Halverson filed an amended complaint for damages against Sommers and Swanson in Washington, asserting several claims.

First, they argued that Sommers and/or Swanson violated the CPA by (1) acting as a debt collection agency without a license in violation of RCW 19.16.110; (2) failing to follow the requirements in chapter 6.27 RCW for issuance of a writ of garnishment and service on Halverson and his employer; and (3) committing a deceptive act in violation of the CPA by intentionally using the South Lake Tahoe address to send notices of the judgment renewal, resulting in interest to accrue on the debt notice to Daniels and Halverson.

Second, they argued that Sommers and Swanson violated the FDCPA because they used false, deceptive, and misleading representations when they attempted to collect on the judgment. Specifically, they argued that Sommers and Swanson used false, deceptive, and misleading representations by mailing materials to the South Lake Tahoe address instead of mailing them to Daniels' and Halverson's address in Vancouver.

Third, they argued that Sommers and Swanson committed common law fraud, and that in the commission of the fraud, Sommers and Swanson intentionally, recklessly, or negligently inflicted emotional distress on Daniels and Halverson. They argued that Sommers and Swanson unlawfully contacted Halverson's employer to garnish the debt, and in doing so harmed his reputation with his employer.

*CR 12(b)(2) Motion to Dismiss*

Sommers and Swanson filed a motion to dismiss based on CR 12(b)(2) for lack of personal jurisdiction. They emphasized that they resided in California and that all of their acts took place in California. Sommers served paperwork on Lowe's in California to garnish

5

Halverson's wages. Swanson similarly had Lowe's served in California in order to garnish Halverson's wages. They argued that they took no actions within Washington and therefore were not subject to personal jurisdiction in Washington as defined in RCW 4.28.185(1). They argued that Washington did not have jurisdiction over them simply because their actions had some effect in the state.

In support of their motion, both Sommers and Swanson filed declarations. Daniels' and Halverson's attorney and Halverson both filed declarations in response. Sommers' and Swanson's attorney filed a declaration in reply.

The trial court granted Sommers' and Swanson's motion to dismiss for lack of personal jurisdiction. The trial court considered the declarations and exhibits submitted by the parties in its ruling. The trial court explained that, although the motion to dismiss was based on CR 12(b)(2), the motion must be treated as a summary judgment motion because the court considered declarations and exhibits in addition to the pleadings. The trial court dismissed Daniels' and Halverson's claims with prejudice, entering the order pursuant to CR 56.

Daniels and Halverson appeal the trial court's order granting the motion to dismiss.

ANALYSIS

A.    STANDARD OF REVIEW

CR 12(b) states that several defenses may be asserted by motion, including "lack of jurisdiction over the person." CR 12(b)(2).

We review a trial court's ruling on a CR 12(b)(2) motion to dismiss for lack of personal jurisdiction de novo. *State v. LG Elecs., Inc.*, 186 Wn.2d 169, 176, 375 P.3d 1035 (2016). "When a motion to dismiss for lack of personal jurisdiction is resolved without an evidentiary hearing, the plaintiff's burden is only that of a prima facie showing of jurisdiction." *Id.* We treat

6

the allegations in the plaintiff's complaint as verities for a CR 12(b)(2) motion. *Id.* at 182. A CR 12(b)(2) motion must be denied "if any state of facts could exist under which the [plaintiff's] claim could be sustained." *Id.* at 183 (adopting CR 12(b)(6) standard).

Nothing precludes a trial court from considering declarations that present evidence outside of the complaint. However, "[e]ven when the trial court considers matters outside the pleadings, we treat the allegations in the complaint as established for purposes of determining jurisdiction." *Montgomery v. Air Serv Corp.*, 9 Wn. App. 2d 532, 538, 446 P.3d 659 (2019). The Supreme Court in *LG Electronics* stated that "we decline to find that an allegation in the complaint is defeated by a contrary statement in a declaration." 186 Wn.2d at 184.

The trial court treated Sommers' and Swanson's motion to dismiss as a summary judgment motion under CR 56 because it considered multiple declarations with exhibits. CR 12(b) states,

> If, *on a motion asserting the defense numbered (6)* to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in rule 56.

(Emphasis added.) By its express terms, CR 12(b) allows a trial court to convert a motion to dismiss to a summary judgment motion only for a motion filed under CR 12(b)(6), not for a motion filed under CR 12(b)(2). Therefore, we conclude that the trial court erred in treating the CR 12(b)(2) motion as a summary judgment motion. However, because our review is de novo, this error does not affect our analysis.

We note that as stated above, at the CR 12(b)(2) motion stage the plaintiff need only make a prima facie showing of jurisdiction based on the assumption that the allegations in the complaint are true. *LG Elecs.*, 186 Wn.2d at 176, 182. But the court in *LG Electronics* stated, "Nothing in our opinion precludes the [defendants] from renewing their motions after further

discovery bearing on relevant facts." *Id.* at 184. In other words, a defendant can bring a later summary judgment motion on jurisdiction even after a CR 12(b)(2) motion is denied.

B.      PERSONAL JURISDICTION

Daniels and Halverson argue that the trial court erred in granting the motion to dismiss because the trial court had specific personal jurisdiction over Sommers and Swanson under the CPA's long-arm provision, RCW 19.86.160, and Washington's general long-arm provision, RCW 4.28.185, and the exercise of jurisdiction would not violate due process. We agree, except for claims for which Daniels and Halverson presented no meaningful argument.

1.      Legal Principles

A state court may exercise personal jurisdiction over a defendant based on the defendant's claim-specific contacts with that state. *Montgomery*, 9 Wn. App. 2d at 540. This type of jurisdiction is called specific personal jurisdiction. *Id.*

> The CPA's long-arm provision, RCW 19.86.160, states,
>
> Personal service of any process in an action under this chapter may be made upon any person outside the *state if such person has engaged in conduct in violation of this chapter which has had the impact in this state which this chapter reprehends*. Such persons shall be deemed to have thereby submitted themselves to the jurisdiction of the courts of this state within the meaning of RCW 4.28.180 and 4.28.185.

(Emphasis added.)

> The general long-arm statute, RCW 4.28.185(1), states:
>
> Any person, whether or not a citizen or resident of this state, who in person or through an agent does any of the acts in this section enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any said acts:
> . . . .
> (b) The commission of a tortious act *within this state*.

(Emphasis added.)

Even if personal jurisdiction exists under Washington's long-arm provisions, the exercise of jurisdiction also must comply with due process. *Noll v. American Biltrite, Inc.*, 188 Wn.2d 402, 411, 395 P.3d 1021 (2017) (RCW 4.28.185(1)); *LG Elecs.*, 186 Wn.2d at 176 (RCW 19.86.160). The Fourteenth Amendment to the United States Constitution's due process clause requires individuals to have " 'fair warning that a particular activity may subject [them] to the jurisdiction of a foreign sovereign.' " *LG Elecs.*, 186 Wn.2d at 176 (alteration in original) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985)). "[A] state may authorize its courts to exercise personal jurisdiction over an out-of-state defendant only if the defendant has certain minimum contacts with the state, such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *LG Elecs.*, 186 Wn.2d at 176.

The court in *LG Electronics* confirmed that to comply with due process, personal jurisdiction over an individual must satisfy three requirements: "(1) purposeful 'minimum contacts' must exist between the defendant and the forum state, (2) the plaintiff's injuries must 'arise out of or relate to' those minimum contacts, and (3) the exercise of jurisdiction must be reasonable, that is, consistent with notions of 'fair play and substantial justice.' " *Id*. at 176-77 (quoting *Grange Ins. Ass'n v. State*, 110 Wn.2d 752, 758, 757 P.2d 933 (1988)) (internal quotations omitted).

To establish sufficient minimum contacts, the party must purposefully avail itself of the privilege of conducting activities within the forum state, invoking the benefits and protections of its laws. *LG Elecs.*, 186 Wn.2d at 177.

In *Ford Motor Co. v. Montana Eighth Judicial District Court* – the United States Supreme Court's most recent personal jurisdiction case – the Court focused on only two

9

requirements. 592 U.S. 351, 359,141 S. Ct. 1017, 1025, 209 L. Ed. 2d 225 (2021). First, the defendant " 'must take some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' " *Id.* (alterations in original) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253, 78 S. Ct. 1228, 2 L. Ed. 2d 1283 (1958)). Second, the plaintiff's claim must " 'arise out of or relate to the defendant's contacts' with the forum." *Ford*, 592 U.S. at 359 (quoting *Bristol-Myers Squibb Co. v. Superior Court*, 582 U.S. 255, 262, 137 S. Ct. 1773, 198 L. Ed. 2d 395 (2017)).

A defendant's physical presence in a state is not required to invoke personal jurisdiction in that state. *Burger King*, 471 U.S. at 476. "So long as a commercial actor's efforts are 'purposefully directed' toward residents of another State, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there." *Id.* (quoting *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774-75, 104 S. Ct. 1473, 79 L. Ed. 2d 790 (1984)).

### 2. Long-Arm Jurisdiction Under the CPA

We first analyze whether Daniels and Halverson sufficiently pleaded their claims that Sommers and Swanson violated the CPA such that they are subject to the CPA's long arm provision in RCW 19.86.160. Daniels and Halverson alleged in their complaint that Sommers and Swanson violated the CPA by (1) operating a collection agency without a license, (2) fraudulently representing their address to the California court to renew the judgment without giving them proper notice, and (3) violating Washington garnishment law.

#### a. Operation of Collection Agency Without License

First, Daniels and Halverson argue that Sommers and Swanson violated the CPA by operating a collection agency without a license. RCW 19.16.110 states that no person shall act

as a "collection agency" without obtaining a license. RCW 19.16.100(4)(a) defines "collection agency" to include "any person directly or indirectly engaged in . . . collecting or attempting to collect claims owed or due or asserted to be owed or due another person." The operation of a collection agency without a license constitutes an unfair act or practice under the CPA. RCW 19.16.440. And the CPA states that unfair acts or practices are unlawful. RCW 19.86.020.

Sommers and Swanson do not dispute the fact that they took steps to collect on the California judgment. Sommers filed an application to renew the judgment in California and then submitted an application to garnish Halverson's wages. Then, Sommers assigned the judgment to Swanson, and Swanson also submitted an application for wage garnishment.

Instead, Sommers and Swanson argue that they are not a "collection agency" because they do not fit within any of the definitions set forth in RCW 19.16.100(4). However, by attempting to garnish Halverson's wages they clearly "engaged in . . . collecting or attempting to collect claims owed or due . . . to another person." RCW 19.16.100(4)(a). In addition, Daniels' and Halverson's complaint alleges that Sommers and Swanson are unlicensed collection agencies and we must treat these allegations as verities for a CR 12(b)(2) motion. *LG Elecs.*, 186 Wn.2d at 182.

We conclude that the allegations in Daniels' and Halverson's complaint are sufficient to establish that Sommers and Swanson acted as unlicensed collection agencies and thereby violated the CPA. In addition, the allegations show that their conduct "had an impact on this state" as required in RCW 19.86.160 because they garnished Halverson's wages in Washington. Therefore, for purposes of a CR 12(b)(2) motion, the trial court had long-arm jurisdiction under RCW 19.86.160 for the collection agency claim.

b.    Deceptive Practices

Daniels and Halverson allege that Sommers violated the CPA by engaging in deceptive acts when he fraudulently represented their address to the California court in order to renew the California judgment, which resulted in them receiving insufficient notice of the action.

RCW 19.86.020 states that "unfair or deceptive acts or practices" are unlawful. Violation of RCW 19.86.020 allows an injured person to file suit for damages under the CPA. RCW 19.86.090.

Daniels and Halverson alleged in their complaint that Sommers, despite having a Vancouver address for Halverson and knowing that Daniels and Halverson lived in Washington, failed to send notice of the renewal of the judgment and information about his collection efforts to the Vancouver address. Instead, Sommers sent it to the South Lake Tahoe address. Daniels and Halverson argue that this constituted an unfair or deceptive act under RCW 19.86.020. They claim that Sommers knew that Daniels and Halverson lived in Washington, but purposefully misrepresented their address to the California courts in order renew the judgment and to allow the interest on the judgment to continue to accrue without notice to them. This permitted Sommers to hide what he was doing and prevented Daniels and Halverson from being proactive earlier when the interest would have been lower. Assuming the truth of these allegations, it is possible that his actions amounted to unfair or deceptive acts under the CPA.

We conclude that the allegations in Daniels' and Halverson's complaint are sufficient to establish that Sommers engaged in unfair or deceptive acts and thereby violated the CPA. In addition, their conduct "had the impact in this state" as required in RCW 19.86.160 because they garnished Halverson's wages in Washington. Therefore, for purposes of a CR 12(b)(2) motion, the trial court had long-arm jurisdiction under RCW 19.86.160 for the deceptive practices claim.

c.   Violation of Washington Garnishment Law

Daniels and Halverson alleged in their complaint that Sommers and Swanson violated the CPA by failing to follow the requirements in chapter 6.27 RCW for issuance of a writ of garnishment. However, Daniels and Halverson present no argument regarding why failing to comply with chapter 6.27 RCW violates the CPA or regarding personal jurisdiction for this claim. We generally decline to consider an issue when the appellant has failed to provide meaningful argument. *Wiklem v. City of Camas*, ___ Wn. App. 2d ___, 551 P.3d 1067, 1078 (2024). Therefore, we conclude that the trial court did not err in dismissing this claim.

3.   Jurisdiction for FDCPA Violation

Daniels and Halverson alleged in their complaint that Sommers and Swanson violated the FDCPA, 15 U.S.C. § 1692. However, Daniels and Halverson present no argument regarding personal jurisdiction for this claim. As noted above, we generally decline to consider an issue when the appellant has failed to provide meaningful argument. *Wiklem*, 551 P.3d at 1078. Therefore, we conclude that the trial court did not err in dismissing this claim.

4.   Long-Arm Jurisdiction Under RCW 4.28.185

Daniels and Halverson argue that the trial court had specific personal jurisdiction under the general long-arm statute, RCW 4.28.185, because they alleged that Sommers and Swanson committed tortious acts within Washington. We agree.

The primary tort that Daniels and Halverson alleged in their complaint was common law fraud in attempting to collect the debt. The harm alleged was emotional distress, embarrassment, and damage to Halverson's reputation with his employer. Assuming the truth of these allegations, the issue under RCW 4.28.185 is whether Sommers and Swanson engaged in the "commission of a tortious act within this state."

The common law fraud claim apparently relates to giving the California court the wrong addresses for Daniels and Halverson. Those acts occurred in California. And obtaining a writ of garnishment also occurred in California. However, the garnishment itself occurred in Washington and the alleged injury occurred in Washington. In general, a tortious act is deemed to have occurred in Washington for purposes of the long-arm statute when an injury occurs in Washington. *Swank v. Valley Christian School*, 188 Wn.2d 663, 688, 398 P.3d 1108 (2017).

We conclude that the allegations in Daniels' and Halverson's complaint are sufficient to establish that Sommers and Swanson committed tortious acts within Washington. Therefore, for purposes of a CR 12(b)(2) motion, the trial court had long-arm jurisdiction over Daniels' and Halverson's tort claims under RCW 4.28.185(1)(b).

5. Due Process

Even though some of Daniels' and Halverson's claims fall within the long-arm jurisdiction of RCW 19.86.160 and RCW 4.28.185(1)(b), we must evaluate whether exercising personal jurisdiction over Sommers and Swanson complies with constitutional due process. As noted above, exercise of personal jurisdiction over an out-of-state defendant is proper if (1) there are purposeful minimum contacts between the defendant and the forum state, which involves purposefully availing itself of the privilege of conducting activities within the forum state; (2) the plaintiffs' injuries arose out of or relate to the defendants' contacts; and (3) exercise of personal jurisdiction is consistent with notions of fair play and substantial justice. *LG Elecs.*, 186 Wn.2d at 176-77.

a. Purposeful Minimum Contacts

Minimum contacts exist if the "defendant 'purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its

14

laws.' " *LG Elecs.*, 186 Wn.2d at 177 (quoting *Burger King*, 471 U.S. at 475) (internal citations omitted). The purposeful availment requirement ensures that defendants will not be pulled into a jurisdiction simply because of random or chance contacts or the independent actions of another party. *Burger King*, 471 U.S. at 475.

All of Sommers' and Swanson's conduct occurred in California. They received assignments of Palant's California judgment in California. They obtained writs of execution in California. They allegedly misrepresented Daniels' and Halverson's addresses in California. They filed an application for wage garnishment in California. And they served the garnishment documents on Lowe's in California.

However, the allegations in Daniels' and Halverson's complaint are sufficient to show that Sommers and Swanson knew that Halverson lived in Washington and they knew that his wages would be garnished in Washington. The question is whether Sommers and Swanson obtaining garnishment orders that they knew would result in garnishment in Washington of Halverson's Washington wages constitutes purposefully availing themselves of the privilege of conducting activities in Washington.

In *Calder v. Jones,* the United States Supreme Court adopted an effects test for jurisdiction involving intentional acts (*Calder* effects test). 465 U.S. 783, 789, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984). In that case, Jones sued a Florida-based newspaper, an editor, and a reporter in California state court based on an allegedly libelous article. *Id*. at 785-86. Jones was a California resident and the newspaper was distributed in California. *Id.* at 785. Neither the editor nor the reporter had any significant contacts with California other than telephone calls to sources in California for the article. *Id.*

The Court held that California courts could exercise jurisdiction over the Florida-based defendants "based on the 'effects' of their Florida conduct in California." *Id*. at 789 (quoting RESTATEMENT (SECOND) OF CONFLICTS OF LAW § 37 (AM. L. INST. 1971)).  Restatement § 37 states,

> A state has power to exercise judicial jurisdiction over an individual *who causes effects in the state by an act done elsewhere* with respect to any cause of action arising from these effects unless the nature of the effects and of the individual's relationship to the state make the exercise of such jurisdiction unreasonable.

(Emphasis added.)

The Court elaborated:

> The allegedly libelous story concerned the California activities of a California resident.  It impugned the professionalism of an entertainer whose television career was centered in California.  The article was drawn from California sources, and the brunt of the harm, in terms both of respondent's emotional distress and the injury to her professional reputation, was suffered in California.  In sum, California is the focal point both of the story and of the harm suffered.

*Calder*, 465 U.S. at 788-89 (footnote omitted).  The Court emphasized that the defendants' "intentional, and allegedly tortious, actions were expressly aimed at California" and "they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works." *Id.* at 789-90.  The Court concluded, "We hold that jurisdiction over petitioners in California is proper because of their intentional conduct in Florida calculated to cause injury to respondent in California." *Id.* at 791.

Federal Courts of Appeal have developed a three-part test based on *Calder*.  It is proper to exercise personal jurisdiction over out-of-state defendants if they "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1077 (9th Cir. 2011).

16

Here, Sommers and Swanson committed an intentional act – obtaining a garnishment order allegedly based in part on prior misrepresentations to the California court about Daniels' and Halverson's address. The garnishment order was expressly aimed at Washington because Sommers and Swanson knew that Halverson worked in Washington and that his wages would be garnished there. And Sommers and Swanson knew that the harm – garnishment of Halverson's wages – would be suffered in Washington. In the words of *Calder*, Sommers' and Swanson's intentional conduct in California was "calculated to cause injury to" Daniels and Halverson in Washington. 465 U.S. at 791. Therefore, under the *Calder* effects test, we conclude that Sommers and Swanson had sufficient purposeful contacts with Washington to invoke personal jurisdiction.

Sommers and Swanson argue that their actions in obtaining the garnishment orders, enforcing the California judgment without registering in Washington, and failing to comply with Washington garnishment law were proper and lawful. They rely on out-of-state cases to support these arguments. However, these arguments relate to the merits of Daniels' and Halverson's claims, not whether the trial court has personal jurisdiction. Therefore, they are immaterial to the CR 12(b)(2) motion.

Sommers and Swanson do not directly address the *Calder* effects test. But they argue that, even if their collection efforts had some impact on Washington, that impact was insufficient to establish personal jurisdiction over them. They cite to *Walker v. Bonney-Watson Co.*, 64 Wn. App. 27, 823 P.2d 518 (1992) and *Montgomery*, 9 Wn. App. 2d 532.

In *Walker*, Walker's husband died while traveling through Idaho. 64 Wn. App. at 30. An Idaho sheriff's deputy delivered a plastic bag containing Walker's husband's remains – including body parts – to an Idaho funeral home, which then sent the remains to a Washington funeral

17

home. *Id*. at 31. An employee of the Washington funeral home delivered the bag containing Walker's husband's remains to Walker, and the contents of the bag fell out when she opened it. *Id*. Walker sued an Idaho county and the Idaho and Washington funeral homes for negligently delivering her husband's remains, causing her serious emotional harm. *Id*. The trial court dismissed the Idaho county and the Idaho funeral home for lack of personal jurisdiction. *Id*. at 32.

Division One of this court held that it would violate due process to exercise jurisdiction over the Idaho county and the Idaho funeral home because they did not purposefully avail themselves of Washington laws. *Id*. at 34-36. The county's acts were all performed in Idaho, and the county solicited no business from Walker. *Id*. at 35. And the Idaho funeral home holding the decedent's remains was done solely at the request of the sheriff's office, and there was nothing in the record to establish that the funeral home sought or received compensation from Walker for its services. *Id*. at 36.

This case is different than *Walker*. Unlike the Idaho county and funeral home in *Walker*, Sommers and Swanson were not passively involved in the harm that Halverson suffered in Washington. They intentionally engaged in activities that targeted and caused harm to Halverson in Washington by serving garnishment papers on Lowe's in California knowing that Halverson worked at a Lowe's store in Washington.

In *Montgomery*, Montgomery's estate filed a wrongful death action in Washington against ABM, alleging negligent provision of wheelchair services in a Texas airport. 9 Wn. App. 2d at 534. ABM is an airline and airport services company that has an affiliate location at SeaTac airport, but ABM did not provide wheelchair services at SeaTac. *Id*. at 535. The trial court denied ABM's motion to dismiss for lack of personal jurisdiction. *Id*. at 536.

Division One held that the complaint should have been dismissed for lack of personal jurisdiction. *Id.* at 545. The court emphasized that for specific jurisdiction, the claim must arise from the defendant's contacts with the forum state. *Id.* at 543. Although ABM had contacts with Washington it performed services at SeaTac, those contacts were unrelated to the estate's claims. *Id.*

*Montgomery* does not apply to this case. As discussed below, there is no question that Daniels' and Halverson's alleged injuries arose from Sommers and Swanson's contacts with Washington – garnishing Halverson's wages in Washington.

We hold that Sommers and Swanson established purposeful minimum contacts with Washington because they committed intentional acts expressly aimed at Washington and caused harm that they knew was likely to be suffered in Washington.

b. Injuries Related to Minimum Contacts

In order for the exercise of personal jurisdiction over out of state defendants to comply with due process, the plaintiffs' injuries must arise out of or relate to the defendants' minimum contacts with the forum state. *LG Elecs.*, 186 Wn.2d at 177.

Here, Sommers' and Swanson's contact with Washington was obtaining and serving a writ of garnishment knowing that Halverson's wages would be garnished in Washington. Daniels and Halverson alleged that they were harmed as a result of Sommers' and Swanson's wage garnishment activities. Therefore, we conclude that Daniels' and Halverson's injuries arose out of or were related to Sommers' and Swanson's contacts with Washington.

        c.    Fair Play and Substantial Justice

The final requirement identified in *LG Electronics* for specific jurisdiction is whether the assertion of personal jurisdiction over Sommers and Swanson comports with notions of fair play and substantial justice. 186 Wn.2d at 177.[1]

We consider the following when determining whether exercising personal jurisdiction comports with fair play and substantial justice:

> the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of controversies, and the shared interest of the several States in furthering fundamental substantive social policies.

*Burger King*, 471 U.S. at 477 (internal quotations omitted). "Only in rare cases will the exercise of jurisdiction not comport with fair play and substantial justice when the nonresident defendant has purposefully established minimum contacts with the forum state." *Downing v. Losvar*, 21 Wn. App. 2d 635, 679, 507 P.3d 894 (2022).

Washington has an interest in ensuring that its debt collection laws are followed. *Panag v. Farmers Ins. Co. of Wash.*, 166 Wn.2d 27, 54, 204 P.3d 885 (2009). The inconvenience of Sommers' and Swanson's defending in Washington after intentionally establishing minimum contacts with the state does not outweigh Washington's interest in adjudicating the dispute, Daniels' and Halverson's interest in obtaining convenient and effective relief, and efficiently resolving this controversy. We held above that Sommers and Swanson purposefully established minimum contacts with Washington, and this is not the rare case in which the exercise of jurisdiction does not comport with notions of fair play and substantial justice. *Downing*, 21 Wn. App. at 679.

---

[1] It is unclear whether this requirement still applies after *Ford*.

d.    Summary

The trial court had long-arm jurisdiction over certain CPA claims under RCW 19.86.160 and over the tort claims under RCW 4.28.185(1)(b).  The exercise of that jurisdiction does not violate due process under the *Calder* effects test.  Therefore, we hold that the trial court erred when it dismissed two of Daniels' and Halverson's CPA claims and their tort claims for lack of personal jurisdiction.

We emphasize that this opinion addresses only personal jurisdiction under CR 12(b)(2) while treating the allegations in Daniels' and Halverson's complaint as verities.  We express no opinion regarding the merits of Daniels' and Halverson's claims.

C.    DISMISSAL WITH PREJUDICE

Daniels and Halverson argue in the alternative that the trial court abused its discretion when it dismissed their claims with prejudice rather than without prejudice.  Sommers and Swanson concede that the trial court erred.

On remand, the trial court must enter an order dismissing Daniels' and Halverson's violation of garnishment law and FDCPA claims without prejudice.

D.    ATTORNEY FEES ON APPEAL

In their conclusion, Daniels and Halverson request attorney fees under RAP 18.1 and RCW 4.84.185.  However, RAP 18.1(2) states that a party must request attorney fees in a separate section of its brief.  Daniels and Halverson did not comply with this requirement.  In addition, RCW 4.84.185 – which addresses frivolous civil actions – does not apply to appeals.  Finally, although Daniels and Halverson are the prevailing party, Sommers' and Swanson's arguments on appeal are not frivolous.  Accordingly, we reject Daniels' and Halverson's request for attorney fees on appeal.

CONCLUSION

We affirm in part, reverse in part, and remand for further proceedings consistent with this opinion.

MAXA, P.J.

We concur:

LEE, J.

PRICE, J.